# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X

ARIEL E. BELEN, as Temporary Co-Trustee of the
Trust created by Harold Herman dated March 1, 1990
and as Temporary Trustee of the Trust created by
Rosemarie Herman dated November 27, 1991,
and ROSEMARIE HERMAN, as Co-Trustee of the
Trust created by Harold Herman dated March 1, 1990,

                      Plaintiffs,

          -against-

JULIAN M. HERMAN, ROCLA, LLC, ROCLAB, LLC,
THE VANGUARD GROUP, INC., OAKWORTH
CAPITAL BANK, DENTONS SIROTE, PC,
DENTONS US LLP, and HOWARD NEISWENDER,

                   Defendants.
------------------------------------------------------------------X

Index No.:
Date Purchased: 06/ /2022

**SUMMONS**

Plaintiff Designates New York
County as the Place of Trial.

Venue is Based Upon
CPLR 503(a).

TO THE ABOVE-NAMED DEFENDANTS:

    **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and

to serve a copy of your answer upon Jaspan Schlesinger LLP, as counsel for the plaintiffs, Ariel

E. Belen, as Temporary Co-Trustee of the Trust created by Harold Herman dated March 1, 1990

and as Temporary Trustee of the Trust created by Rosemarie Herman dated November 27, 1991,

and Rosemarie Herman, as Co-Trustee of the Trust created by Harold Herman dated March 1,

1990, within twenty (20) days after the service of this Summons, exclusive of the day of service,

or within thirty (30) days after the service is complete if this Summons is not personally delivered

to you within the State of New York. In case of your failure to appear or answer, judgment will

be taken against you by default for the relief demanded in the Verified Complaint.

1

SLM / #1629142v1 / 0150420 - 074019

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 1

Dated: Garden City, New York
      June 24, 2022

JASPAN SCHLESINGER LLP
Attorneys for Plaintiffs

By: _____
STEVEN R. SCHLESINGER
GAYLE S. GERSON
300 Garden City Plaza, 5th Floor
Garden City, New York 11530
(516) 746-8000

TO:    JULIAN M. HERMAN
        Defendant
        5 Sloans Curve
        Palm Beach, Florida 33480

        ROCLA, LLC
        Defendant
        c/o Julian M. Herman
        5 Sloans Curve
        Palm Beach, Florida 33480

        ROCLAB, LLC
        Defendant
        c/o Julian M. Herman
        5 Sloans Curve
        Palm Beach, Florida 33480

        THE VANGUARD GROUP, INC.
        Defendant
        100 Vanguard Boulevard
        Malverne, Pennsylvania 19355

        OAKWORTH CAPITAL BANK
        Defendant
        850 Shades Creek Parkway
        Birmingham, Alabama 35209

        DENTONS SIROTE, PC
        Defendant
        2311 Highland Avenue
        Birmingham, Alabama 35205

SLM / #1629142v1 / 0150420 - 074019

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM    INDEX NO. 155364/2022
NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 06/24/2022

HOWARD NEISWENDER
Defendant
c/o Dentons Sirote, PC
2311 Highland Avenue
Birmingham, Alabama 35205

SLM / #1629142v1 / 0150420 - 074019

3

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X

ARIEL E. BELEN, as Temporary Co-Trustee of the
Trust created by Harold Herman dated March 1, 1990
and as Temporary Trustee of the Trust created by
Rosemarie Herman dated November 27, 1991,
and ROSEMARIE HERMAN, as Co-Trustee of the
Trust created by Harold Herman dated March 1, 1990,

                         Plaintiffs,

              -against-

JULIAN M. HERMAN, ROCLA, LLC, ROCLAB, LLC,
THE VANGUARD GROUP, INC., OAKWORTH
CAPITAL BANK, DENTONS SIROTE, PC,
DENTONS US LLP, and HOWARD NEISWENDER,

                    Defendants.
-----------------------------------------------------------------------X

Index No.: _____

**Jury Trial Demanded**

**VERIFIED COMPLAINT**

Plaintiffs Ariel E. Belen, as Temporary Co-Trustee of the Trust created by Harold Herman

for the benefit of, among others, Rosemarie Herman, dated March 1, 1990 (the "1990 Trust"), and

as Temporary Trustee of the Trust created by Rosemarie Herman dated November 27, 1991 (the

"1991 Trust"), and Rosemarie Herman, as Co-Trustee of the 1990 Trust (collectively, the

"Plaintiffs"), by their attorneys, Jaspan Schlesinger LLP, complaining of defendants Julian M.

Herman (the "Judgment Debtor"), Rocla, LLC ("Rocla"), Roclab, LLC ("Roclab"), The Vanguard

Group, Inc. ("Vanguard"), Oakworth Capital Bank ("Oakworth"), Dentons Sirote, PC ("Sirote")

Dentons US LLP ("Dentons US" and, together with Sirote, the "Dentons Defendants"), and

Howard Neiswender ("Neiswender" and, collectively with the Judgment Debtor, Vanguard,

Oakworth, and the Dentons Defendants, the "Defendants"), allege as follows:

**Nature of the Action**

1.     On September 26, 2017, Plaintiffs were awarded a money judgment against the

1

defendant Judgment Debtor in the sum of $103,637,208.44, together with applicable interest, in the Supreme Court of the State of New York, County of New York. The judgment arose from the Judgment Debtor's acts to defraud his sister Rosemarie Herman ("Rosemarie") of her one-half interest in six (6) prime Manhattan apartment buildings that were owned in trust for the benefit of Rosemarie Herman ("Rosemarie") and her children.

2.     This action concerns the Judgment Debtor's continued actions to defraud Rosemarie and her children, and the other Defendants' conspiracy with the Judgment Debtor to fraudulently conceal his assets from Plaintiffs, in furtherance of the original fraud. The conspiracy involved a series of transfers between bank and brokerage accounts in the names of sham, alter-ego entities which the Judgment Debtor owns and controls, culminating with a transfer of the majority of those assets to bank accounts based in Liechtenstein and beyond (the "Scheme"). On or about September 27, 2017, immediately following entry of the judgment, Plaintiffs served a restraining notice on Vanguard (the "2017 Restraining Notice").

3.     The 2017 Restraining Notice required Vanguard to restrain all accounts in which the Judgment Debtor had an ownership interest or for which he was a signatory, including any fictitious entities unknown to the judgment creditors. The 2017 Restraining Notice prohibited Vanguard from transferring any assets out of such accounts.

4.     Vanguard purported to have complied with the 2017 Restraining Notice and accompanying information subpoena (the "2017 Information Subpoena"), which demanded information about any accounts for which the Judgment Debtor "may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within three (3) years prior thereto, including but not limited to any account for which the judgment debtor has or had signatory power."

2

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM     INDEX NO. 155364/2022
NYSCEF DOC. NO. 1                                     RECEIVED NYSCEF: 06/24/2022

5.      At the time, Vanguard held at least two (2) accounts titled to Rocla and Roclab, on which the Judgment Debtor was the sole authorized signatory, and which contained more than $150,000,000 in assets belonging to the Judgment Debtor.  Rocla and Roclab were wholly owned and managed by two other entities, which were, in turn, managed by the Judgment Debtor's attorney and agent, Neiswender.

6.      Vanguard falsely responded to the 2017 Information Subpoena and failed to disclose the existence of the Rocla and Roclab accounts.  Upon information and belief, Vanguard, in a conspiracy with the Judgment Debtor and Neiswender, *willfully and intentionally concealed the existence of the Rocla and Roclab accounts*.  Indeed, Neiswender and his law firm advertised that it assisted clients in "protecting" their assets from creditors.

7.      Within just two (2) weeks of falsely claiming in response to the 2017 Information Subpoena that it held no accounts in which the Judgment Debtor had an interest or for which he had signatory power, Vanguard, at the direction of the Judgment Debtor and Neiswender, liquidated all assets in the Rocla and Roclab accounts, totaling approximately $150,000,000.  Vanguard then transferred most of those assets to newly opened accounts at Oakworth—a small bank in Birmingham, Alabama with which Neiswender, also based in Birmingham, had a preexisting relationship.

8.      Upon information and belief, Vanguard, Neiswender and Oakworth knew that the Judgment Debtor intended to conceal the assets from creditors, and that he would likely further transfer the funds offshore.  Vanguard was initially asked by the Judgment Debtor to transfer the funds in the Rocla and Roclab accounts offshore but declined.  Instead, Vanguard transferred money to Oakworth, an obscure bank in Alabama.

9.      Upon information and belief, Neiswender routinely and continually utilizes his

3

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
INDEX NO. 155364/2022
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 06/24/2022

relationship with Oakworth to aid debtors in defrauding creditors and others by hiding their funds.

10.    In 2017, Oakworth reported holding approximately $500,000,000 in customer assets. Vanguard's transfer to Oakworth of $150,000,000 of the Judgment Debtor's funds increased the assets held by Oakworth by approximately one-third and was, upon information and belief an extraordinary transaction for Oakworth.

11.    Oakworth was instructed by Neiswender to abide by the Judgment Debtor's instructions with regard to the $150,000,000 in the Rocla and Roclab accounts. Oakworth, at the Judgment Debtor's direction, made multiple wire transfers, each in the amount of $10,000,000, totaling approximately $150,000,000, to a bank account based in Liechtenstein. None of these transfers were an ordinary course of business transfer by Oakworth.

12.    Vanguard's and Oakworth's complicity in the Scheme is underscored by their utter failure to comply with well-established requirements imposed on banks and broker-dealers pursuant to the Anti Money Laundering ("AML") laws encompassed in the Bank Secrecy Act ("BSA"), and their implementing regulations.

13.    Neiswender and his law firm directed this, enabled this and created the chain of events that resulted in the transfer of the funds to Liechtenstein placing the funds out of the reach of Plaintiffs.

14.    Under the AML laws, all financial institutions, including Vanguard and Oakworth, are required to maintain and implement policies, procedures and internal controls designed to prevent, detect and report suspicious activity. Specifically, AML programs are required to have appropriate risk-based procedures for conducting customer due diligence. Financial institutions must have customer identification procedures that identify the beneficial owners of legal entity accounts. They also must monitor transactions for potentially suspicious activity. When immediate

4

attention is warranted, such as when large amounts are about to be transferred, financial institutions are expected to inform law enforcement authorities.

15.     Had Vanguard and Oakworth had effective AML programs with which they properly complied rather than turning a blind eye, they immediately would have uncovered the fraudulent nature of the accounts and transactions and/or taken a different course of action.

16.     Having been served with the 2017 Information Subpoena and 2017 Restraining Notice, Vanguard should have disclosed the alter-ego accounts to Plaintiffs and restrained the accounts.

17.     Similarly, Oakworth, given the type of activity involved, should have refused to execute the requested transactions, and contacted law enforcement authorities to investigate, instead of assisting in moving the funds out of the country.

18.     Vanguard and Oakworth not only failed to comply with their AML obligations, but, upon information and belief, did so *intentionally*, given the blatantly fraudulent nature of the subject accounts and transactions.

19.     To date, approximately $115,000,000 remains outstanding on Plaintiff's judgment. But for Defendants' participation in the Scheme, Vanguard's egregious violation of the 2017 Restraining Notice and intentionally false response to the 2017 Information Subpoena, and Vanguard's and Oakworth's failure, and/or deliberate disregard, of AML compliance programs, the judgment would have been satisfied years ago.

## The Parties

20.     Plaintiff Belen is the Temporary Trustee of the 1991 Trust, and a Temporary Co-Trustee of the 1990 Trust.  Belen is a citizen of the State of New York.

21.     Plaintiff Rosemarie is the Judgment Debtor's sister, Co-Trustee and an income

5

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

beneficiary of the 1990 Trust. Rosemarie is also an income beneficiary of the 1991 Trust. Rosemarie is a citizen of the State of New York and a resident of the County of New York.

22.     Upon information and belief, the Judgment Debtor (defendant Julian M. Herman) is an individual domiciled in the State of Florida.  The judgment arose from Mr. Herman's defrauding the trusts established for his sister, and the scheme to secrete the money to satisfy the judgment was in furtherance of that original fraud to deprive the Plaintiffs of that to which they are entitled.

23.     Rocla is a South Dakota limited liability company and, upon information and belief, is a citizen of the State of Alabama, because its sole member, EntityA, LLC, is a citizen of the State of Alabama.

24.     Roclab is a South Dakota limited liability corporation and, upon information and belief, is a citizen of the State of Alabama, because its sole member, EntityB, LLC, is a citizen of the State of Alabama.

25.     Upon information and belief, Vanguard is a business corporation organized and existing under the laws of the State of Pennsylvania and routinely conducts business in the State of New York.

26.     Upon information and belief, Oakworth is a banking organization existing under the laws of the State of Alabama, with a principal place of business in Alabama.

27.     Upon information and belief, Dentons US LLP is a foreign limited liability partnership and a member of Dentons, a global full-service law firm which maintains offices in the City, County, and State of New York.

28.     Upon information and belief, Dentons Sirote, PC is a professional corporation existing under the laws of the State of Alabama, and is a subsidiary and/or member of Dentons US

6

LLP. Dentons Sirote, PC is the successor in interest to Sirote & Permutt, PC.

29.    Upon information and belief, Neiswender is an individual domiciled in the State of Alabama, and is a member and/or partner of Dentons Sirote, PC.

### Jurisdiction and Venue

30.    This Court has personal jurisdiction over Defendants pursuant to CPLR §§ 302(a)(1) and (a)(2), because the complaint alleges a civil conspiracy in which one or more co-conspirators committed a tortious act within the State, including, but not limited to, making fraudulent wire transfers that were routed through New York.

31.    The Court has personal jurisdiction over the Judgment Debtor, Vanguard, Rocla, Roclab, and Dentons pursuant to CPLR § 302(a)(1) because they regularly transact business within the State.

32.    The Court has personal jurisdiction over Oakworth, Neiswender and Dentons Sirote pursuant to CPLR § 302(a)(3) because they committed tortious acts outside the State causing injury to property within the State.

33.    Venue is proper in this Court pursuant to CPLR § 503(a).

### Allegations Common to All Claims for Relief

#### A. The Judgment Debtor's Fraud on Rosemarie

34.    For approximately twenty (20) years, the Judgment Debtor engaged in an elaborate fraud to deprive Rosemarie and her children of their 50% interest in six (6) prime residential buildings in Manhattan, which were held in trust for the benefit of Rosemarie and her children.

35.    The fraud was carried out through a series of transactions undertaken while the Judgment Debtor conspired with, among others, his boyhood friend, Michael Offit, whom he arranged to have serve as a successor trustee of the 1990 Trust and successor trustee of the 1991

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM    INDEX NO. 155364/2022
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/24/2022

Trust in or about 1997, replacing Rosemarie's mother in those roles.

36.    In furtherance of the fraud, the Judgment Debtor transferred the properties, in or about 1997, to separate limited liability companies controlled by the Judgment Debtor. On or about December 31, 1998, the Judgment Debtor acquired from the trusts 100% of the membership interests in the limited liability companies for the paltry sum of $8,000,000, less than $3,000,000 of which was supposedly paid in cash.

37.    In or about 2002, the Judgment Debtor caused five (5) of the properties to be sold in a private sale for $101,925,000. The property located at 952 Fifth Avenue, New York, New York, was not sold in the 2002 transaction, but was instead retained by the Judgment Debtor's limited liability company.

38.    The Judgment Debtor's profit on the sale of the properties, which closed in January 2003, was approximately $92,000,000.

39.    Using documents obtained through discovery from third parties and other investigative efforts, Plaintiffs have traced the path of the fraud proceeds through multiple bank and brokerage accounts, eventually ending up in accounts last known to be titled to Rocla and Roclab.

40.    The Judgment Debtor initially invested the fraudulent sale proceeds in brokerage accounts at UBS Securities, Inc. ("UBS"). In or around 2003, he moved the assets to Goldman Sachs. In or around 2007, the Judgment Debtor transferred securities valued at $107,345,000 to J.P. Morgan Chase Bank N.A. ("Chase"). In or around early 2011, the Judgment Debtor transferred his securities, held in bonds valued at approximately $112,000,000, from Chase back to UBS, placing them in multiple accounts in the names of alter-ego entities under his control.

41.    Based, *inter alia*, upon documents produced by UBS in response to a subpoena, by

8

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM   INDEX NO. 155364/2022
NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 06/24/2022

2015, the Judgment Debtor held the bulk of his assets, worth approximately $150,000,000, in an account titled to one of the Judgment Debtor's self-settled revocable trusts, which uses the fictitious name Marstack & Co. ("Marstack"), and in an account titled to Revenue Funding Services, LLC ("RFS").

42.     In June 2016, the Judgment Debtor transferred all assets held in the Marstack and RFS accounts at UBS to the newly opened Rocla and Roclab accounts at Vanguard. Neither of those entities had any business purpose beyond holding the Judgment Debtor's funds.

**B.  The 2011 Action and Judgment**

43.     In January 2011, shortly after discovering the fraud in 2010, Rosemarie, in her capacity as beneficiary of the 1990 Trust and the 1991 Trust, commenced an action in the Supreme Court of the State of New York, New York County (the "Supreme Court"), entitled *Rosemarie A. Herman, et al. v. Julian the Judgment Debtor Herman, et al.*, Index No. 650205/2011 (the "2011 Action").

44.     By order dated July 16, 2013, the Supreme Court appointed Belen as Temporary Trustee of the 1991 Trust and the 1990 Trust.

45.     On July 13, 2015, the Supreme Court sanctioned the Judgment Debtor for egregious and pervasive discovery misconduct, entering an order striking his answer, third party claims and counterclaims with respect to liability (the "Liability Default").

46.     On October 13, 2015, the Appellate Division, First Department (the "Appellate Division") unanimously denied the Judgment Debtor's motion for a temporary restraining order, preliminary injunction, and a stay, and vacated portions of an existing temporary restraining order to which the Plaintiffs had previously consented.

47.     On December 3, 2015, the Appellate Division unanimously affirmed the Liability

Default.

48.     Prior to the Appellate Division's rulings regarding the Liability Default, the Judgment Debtor and his attorney, Neiswender, potentially together with other persons as yet unknown, concocted and implemented the Scheme in furtherance of the fraud upon Plaintiffs, to shield the Judgment Debtor's assets and to delay, hinder and prevent Plaintiffs from collecting the then clearly inevitable substantial judgment against the Judgment Debtor.

49.     Vanguard and Oakworth were key participants in the Scheme, facilitating the liquidation and transfer of approximately $150,000,000 outside of the country mere weeks after the entry of final judgment in September 2017.

50.     On September 26, 2017, the Supreme Court entered a judgment against the Judgment Debtor (i) in favor of Rosemarie as Co-Trustee of the 1990 Trust and Belen as Temporary Trustee thereof, in the total sum of $24,973,652.83 with statutory interest from entry of judgment at 9%; and (ii) in favor of Belen, as Temporary Trustee of the 1991 Trust, in the total sum of $78,663,555.61, with statutory interest from entry of judgment at 9% (the "Judgment"). A true and correct copy of the Judgment is annexed hereto and made a part hereof as **Exhibit 1**.

51.     The Judgment identifies the Judgment Debtor by his legal name, Julian Maurice Herman.

## C.   Neiswender Forms Rocla and Roclab

52.     On or about December 8, 2015, shortly after the rulings by the Appellate Division that unanimously affirmed the Liability Default against the Judgment Debtor, Neiswender, in the course of his duties as a partner of Sirote, and acting as the Judgment Debtor's agent, prepared, executed, and submitted to the State of South Dakota Articles of Organization for Rocla and Roclab, together with accompanying documentation.

10

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 1

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

53. It is no coincidence that South Dakota was selected for the formation of these entities, as it has become, upon information and belief, one of the world's most infamous jurisdictions for debtors and other bad actors to attempt to conceal their money from creditors, tax collectors and law enforcement authorities.

54. The Articles of Organization identified Neiswender as the organizer, and identified their sole managing members as EntityA, LLC (for Rocla) and EntityB, LLC (for Roclab), respectively.

55. Simultaneously, Neiswender submitted organizational documents to the State of Nevada for the formation of EntityA, LLC ("EntityA"), and EntityB, LLC ("EntityB").

56. The documents identify Neiswender as the sole manager of both EntityA and EntityB.

57. The sole members of EntityA and EntityB, respectively, were Alcor Foundation ("Alcor") and Balcor Foundation ("Balcor"), both formed by the Judgment Debtor. The Judgment Debtor served as one of two (2) board members for Alcor and Balcor.

58. Neither EntityA nor EntityB are known to have conducted any business.

59. Upon information and belief, Neiswender advised the Judgment Debtor to form the foregoing multi-layered corporate structure to hide his assets from Plaintiffs.

60. Neiswender, upon information and belief, routinely and continually promotes, packages, and sells versions of the Scheme to launder money and defraud judgment creditors.

**D. The Judgment Debtor and Neiswender Open Rocla and Roclab Brokerage Accounts at Vanguard Using False Information**

61. On March 24, 2016, W. Wesley Hill, an attorney and a Certified Public Accountant employed at Sirote, at the direction of Neiswender, sent two (2) letters to Vanguard (the "March 2016 Letters"), requesting to open brokerage accounts titled in the names of Rocla and Roclab,

11

GSG / #1628396v4 / 0150420 - 074019

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

respectively. The March 2016 Letters advised that "initial funds will be wired once the account is open." Neiswender was copied on both letters.

62.    Enclosed with each of the March 2016 Letters was an "Account Kit," including documentation describing Rocla and Roclab as single-member limited liability companies—EntityA as the sole member of Rocla and EntityB as the sole member of Roclab. The documents identified Neiswender as the sole manager of EntityA and EntityB.

63.    The documentation identified "*Julian M. Herman*" as the account owner and sole authorized signatory on each account. The Social Security number used was the Judgment Debtor's legitimate Social Security number, ending in 3771.

64.    The documentation listed the Judgment Debtor's occupation as "Real Estate Developer," and his address as 3300 S. Dixie Hwy, Ste 1-270, West Palm Beach, Florida 33405." That address was a mail drop and not an office. The email address provided was jmauriceherman@hotmail.com

65.    The Judgment Debtor affixed his signature to the document, dated March 23, 2016.

66.    Enclosed with each Account Kit was a "Unanimous Written Consent in Lieu of Meeting of the Sole Manager" of each entity, dated March 24, 2016, granting "Julian M. Herman" the authority to act on the entity's behalf (the "First Consents"). The First Consents were executed by Neiswender, in his capacity as manager of EntityA, as sole member of Rocla, and as manager of EntityB, as sole member of Roclab, respectively.

67.    On April 5, 2016, Vanguard confirmed that the Rocla and Roclab accounts had been opened (the "First Rocla and Roclab Accounts").

68.    *The following day*, on April 6, 2016, Vanguard generated correspondence confirming that the First Rocla and Roclab Accounts had been *closed*. Upon information and

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM    INDEX NO. 155364/2022

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/24/2022

belief, the Judgment Debtor, upon Neiswender's advice, directed Vanguard to close the First Rocla and Roclab Accounts.

69.    Less than one week later, on April 11, 2016, W. Wesley Hill sent two (2) letters to Vanguard (the "April 2016 Letters"), again with copies to Neiswender, directing the opening of *new* accounts for Rocla and Roclab—this time using false information (the "Fraudulent Rocla and Roclab Accounts").

70.    When the Fraudulent Rocla and Roclab Accounts were opened, Rocla and Roclab were designated as foundations rather than as single member limited liability companies.

71.    The new account opening documents identified "*Maurice J. Herman*" (and *not* Julian M. Herman) as the account owner and authorized signatory, with a Social Security number ending in 9469.  The Social Security number used does *not* belong to the Judgment Debtor.

72.    Although the documentation identifies the "authorized signatory" as "Maurice J. Herman," the signature is *identical* to the signature of "Julian M. Herman" on the First Rocla and Roclab Account opening documentation.  It was therefore abundantly clear that the Judgment Debtor had executed both sets of documents.

73.    Enclosed with the Fraudulent Rocla and Roclab Account opening documentation was a "Written Consent in Lieu of Meeting of the Sole Manager" of each entity (the "Fictitious Consents"), identical to the First Consents except that they designate "Maurice J. Herman" as an authorized signatory, rather than "Julian M. Herman."  The Fictitious Consents, like the First Consents, were executed by Neiswender, and are dated March 23, 2016.

74.    Notwithstanding the designation of the Judgment Debtor as the account owner, Neiswender took pains to avoid any association between the Judgment Debtor and the Fraudulent Rocla and Roclab Accounts.  The April 2016 Letters directed:

GSG / #1628396v4 / 0150420 - 074019

> "Mr. Herman is <u>not</u> the owner of the account. His role is solely that of a signatory on behalf of [Rocla/Roclab]. Therefore the account should be titled solely in the name of [Rocla/Roclab], and Mr. Herman's name should <u>not</u> appear in the account title, any printed checks, any account statements, or any correspondence." (Emphasis in original).

75.    Shortly after receiving the account documentation, Vanguard confirmed the opening of the Fraudulent Rocla and Roclab Accounts.

76.    Upon information and belief, Vanguard did not question why different information concerning the same entities was provided.

77.    Upon information and belief, Vanguard did not take any steps to verify whether Rocla and Roclab were legitimate businesses or whether the Judgment Debtor, or someone else, was the ultimate beneficial owner of the accounts.

78.    In short, *<u>Vanguard opened the Fraudulent Rocla and Roclab Accounts based upon supporting documentation that contained obviously fictitious identifying information, including a false name and Social Security number</u>*.

79.    Had Vanguard complied with its due diligence obligations under the AML laws, it would have confirmed that the Judgment Debtor was the true owner of both sets of accounts and recognized that he used false information to open the accounts. Based on that, the accounts should not have been opened, because under the AML rule requiring a Customer Identification Program ("<u>CIP</u>"), the identity of the account holders *must* be verified. Given that a fake name and wrong Social Security number were used, no legitimate verification could possibly have been obtained by Vanguard.

80.    In addition, as part of the CIP process, Vanguard was required to review the legal entities under whose names the accounts were being opened and should have seen that the entities themselves were mere shams and instrumentalities of the Judgment Debtor.

14

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

INDEX NO. 155364/2022

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 06/24/2022

81.    The timing of the processing of the First Rocla and Roclab Accounts and the Fraudulent Rocla and Rocla Accounts was so close that it forecloses the possibility that Vanguard was merely sloppy.  Vanguard *had to have intentionally* ignored what was staring it in the face.

82.    Vanguard's knowledge of the Judgment Debtor's use of false information is further confirmed by additional documents.  In May 2016, the Judgment Debtor submitted forms to Vanguard to approve the sending and receipt of wires from and to the Fraudulent Rocla and Roclab Accounts. He mistakenly signed the forms with his legal name, "Julian M. Herman." Subsequently, the Judgment Debtor resubmitted the forms signed as "Maurice J. Herman," stating that he was providing them at Vanguard's "request."  Thus, Vanguard was not only aware of the Judgment Debtor's use of a fictitious identity, but actively and overtly assisted and participated in his duplicity.

83.    By letter dated May 23, 2016, shortly after the Supreme Court in the underlying action entered an order precluding the Judgment Debtor from participating in the inquest on damages due to additional discovery misconduct (the "Preclusion Order"), J. Wesley Hill forwarded documents signed by the Judgment Debtor authorizing the transfer of approximately $139,600,000 in securities from the Debtor's revocable trust account at UBS to the Fraudulent Roclab Account at Vanguard, and approximately $10,700,000 from the RFS account at UBS to the Fraudulent Rocla Account at Vanguard (collectively, the "UBS Transfers").  The UBS Transfers were made on or about June 13, 2016.

**E.  The 2017 Restraining Notice and Information Subpoena**

84.    In September 2017, shortly before the Judgment was entered, Plaintiffs learned, through allegations contained in an interpleader complaint filed by UBS in the United States District Court for the Southern District of New York, that the Judgment Debtor held substantially

15

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 1

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

all of his liquid assets with UBS until 2016, in accounts titled to multiple shell entities and at least one trust with a fictitious name, and transferred those assets to Vanguard in or about June 2016.

85.    On September 27, 2017, Plaintiffs served the 2017 Restraining Notice and the 2017 Information Subpoena upon Vanguard.  A true and correct copy of the 2017 Restraining Notice and the 2017 Information Subpoena is annexed hereto and made a part hereof as **Exhibit 2**.

86.    The 2017 Restraining Notice and 2017 Information Subpoena identified the judgment debtor as "Julian Maurice Herman," with a Social Security number ending in 3771 (the full Social Security number was provided).

87.    The 2017 Restraining Notice stated, in relevant part:

> **WHEREAS**, it appears that you owe a debt to the judgment debtor or are in possession or in custody of property in which the judgment debtor has an interest;
>
> ***including but not limited to any and all accounts in your possession and/or control due to, owned by, or otherwise in which the debtor JULIAN MAURICE HERMAN, has an ownership interest, *or is a signatory*.**
>
> **TAKE NOTICE** that pursuant to CPLR 5222(b), which is set forth in full herein, you are hereby forbidden to make or suffer any sale, assignment or transfer of, or any interference with any property in which the judgment debtor has an interest, except as therein
>
> (*See* Exhibit 2 (italics and underline added)).

88.    Vanguard, consenting to the jurisdiction of the New York courts, served a response to the 2017 Information Subpoena dated October 3, 2017, together with a cover letter stating that "[n]o open accounts in the name of Judgment debtor Julian Maurice Herman were located to restrain."  Although not required to do so by law, Vanguard copied the Judgment Debtor on its response to the 2017 Information Subpoena.  A true and correct copy of Vanguard's response is annexed hereto and made a part hereof as **Exhibit 3**.

16

GSG / #1628396v4 / 0150420 - 074019

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

INDEX NO. 155364/2022

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 06/24/2022

89.    Vanguard's response served to mislead the Plaintiffs as to the location of the Judgment Debtor's funds.

90.    Vanguard had an obligation, pursuant to the 2017 Restraining Notice, to restrain the Fraudulent Rocla and Roclab Accounts, because the Judgment Debtor was identified in Vanguard's documentation as both the account owner and the sole authorized signatory.

91.    The Vanguard Transfers to Oakworth occurred approximately three weeks *after* Vanguard was served with the 2017 Restraining Notice, and after it responded to the 2017 Information Subpoena omitting any mention of the accounts from which the transfers were going to be made.

92.    Upon information and belief, Vanguard knowingly disregarded the 2017 Restraining Notice when it made the Vanguard Transfers.

93.    Vanguard also had an obligation to provide a truthful response to the 2017 Information Subpoena.

94.    Vanguard also provided false information in response to the 2017 Information Subpoena, depriving Plaintiffs of critical facts that would have enabled them to discover the Fraudulent Rocla and Roclab Accounts.

95.    Question No. 9 of the 2017 Information Subpoena states as follows:

> 9.    Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or *within three (3) years* prior thereto, including but not limited to any account for which the judgment debtor has *or had signatory power?* (Emphasis supplied).

96.    In response to Question No. 9, Vanguard responded, "Yes."

97.    Question No. 10 of the 2017 Information Subpoena reads as follows:

> 10.    As to such account, which is the exact title of the account, the

17

> date opened, amounts presently on deposit; if closed, the amount of
> deposit when closed and the date closed?

98.   In response to Question No. 10, Vanguard supplied intentionally misleading information concerning a single account held by the J. Maurice Herman Revocable Trust, opened in 2008 and closed in 2016. This was done in furtherance of the Scheme.

99.   Vanguard intentionally failed to disclose the existence of the Fraudulent Rocla and Roclab Accounts, on which the Judgment Debtor was the account owner and authorized signatory.

100.   Had Vanguard properly disclosed the Fraudulent Rocla and Roclab Accounts, Plaintiffs would have promptly taken steps to secure the funds in those accounts.

101.   Vanguard also intentionally failed to disclose the First Rocla and Roclab Accounts, which were opened and closed less than three (3) years prior to the service of the 2017 Information Subpoena, on which the Judgment Debtor (using his real, legal, name and real Social Security number) was designated as the account owner and authorized signatory. Those accounts therefore _clearly_ should have been disclosed in response to Question No. 10 of the 2017 Information Subpoena. They were not.

102.   Had Vanguard properly disclosed the First Rocla and Roclab Accounts, Plaintiffs would have served a subpoena leading to the discovery of documents revealing the hidden assets.

**F.   The Judgment Debtor and Neiswender Open Accounts at Oakworth**

103.   Upon information and belief, in or about September 2017, after entry of the Judgment, Neiswender, the Judgment Debtor, and Vanguard communicated regarding the Judgment Debtor's intent to liquidate his holdings in the Fraudulent Rocla and Roclab Accounts, valued at more than $150,000,000, and wire the funds offshore, beyond the immediate reach of judgment creditors.

104.   Upon information and belief, Vanguard agreed to the plan, but insisted on using an

18

intermediary to hide Vanguard's involvement in the scheme.

105.    Upon information and belief, Neiswender's contacts and influence at Oakworth were essential in securing Oakworth's participation in the Scheme by receiving the funds from Vanguard and then facilitating Judgment Debtor's transfer of the funds offshore.

106.    As part of the Scheme, the Judgment Debtor had already established a banking relationship with Oakworth as early as January 2017, just two (2) months after the Appellate Division had unanimously affirmed the Preclusion Order. He maintained at least four (4) accounts under fictitious names in which he conducted limited activity: ATB & Co., PBIA & Co., IAS & Co., and IDAJ & Co.

107.    On or about October 12, 2017, the Judgment Debtor, with the assistance of Neiswender, opened the Rocla and Roclab accounts at Oakworth. This was only approximately two (2) weeks after the Judgment was entered and the 2017 Restraining Notice was served on Vanguard.

108.    The Judgment Debtor was the sole authorized signatory on the Rocla and Roclab accounts at Oakworth.

109.    Notably, the business inquiry forms generated by Oakworth for Rocla and Roclab indicated the following: "ID Match: FAILED"; "EIN Match: FAILED"; Address Match: FAILED. Those results should have triggered further investigation which, had it been properly conducted, would have precluded Oakworth from opening the accounts.

110.    Tellingly, on the Client Information Verification Form prepared by Oakworth in collaboration with Neiswender, the number of anticipated monthly domestic and international wires was designated as "low (0-3)" and the amount of monthly cash deposits and withdrawals was indicated as "low (1k-5k)." The BSA risk rating was determined to be "low." Those

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 1

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

designations proved to be completely inaccurate in light of the size, frequency, and destinations of the Judgment Debtor's subsequent wire transfers. The Rocla and Roclab accounts did not have zero to three (3) wires, totaling less than $5,000 per month; instead, at least fifteen (15) wire transfers were made within a matter of weeks totaling approximately $150,000,000.

111.   The foregoing low-risk designations were made notwithstanding the fact that Neiswender advised an Oakworth representative working on establishing the account that the Judgment Debtor is moving his funds from Vanguard "to create more flexibility with wires," as Vanguard had "severe limitations." The "limitations" to which Neiswender referred, of course, were that Vanguard declined to directly wire the funds to Liechtenstein.

112.   If Oakworth had conducted the required AML review of Rocla and Roclab, it would have determined that the entities were merely shell companies with no business purpose at all.

### G. The Judgment Debtor Liquidates Vanguard Holdings and Transfers the Hidden Assets to Oakworth

113.   From October 10, 2017 through October 13, 2017—approximately two (2) weeks after Vanguard had been served with the 2017 Restraining Notice—the Judgment Debtor liquidated substantially all of his holdings in the Fraudulent Rocla and Roclab Accounts at Vanguard, amounting to approximately $150,000,000.

114.   As of October 13, 2017, the Judgment Debtor held $140,637,332.09 and $9,825,126.44, respectively, in Vanguard's Federal Money Market Funds for Roclab and Rocla.

115.   On October 18, 2017, Vanguard processed the following wire transfers: (i) a transfer in the amount of $140,636,000 from the Vanguard Federal Money Market Fund for Roclab to Oakworth; and (ii) a transfer in the amount of $9,824,000 from the Vanguard Federal Money Market Fund for Roclab to Oakworth. These transfers were followed by a series of smaller transfers in October, November and December 2017, totaling approximately $411,000.00

20

(collectively, the "Vanguard Transfers").

116.  The Vanguard Transfers were made *three (3) weeks after* Vanguard was served with the 2017 Restraining Notice, which required Vanguard to restrain the very accounts from which the Vanguard Transfers were made.

117.  The Vanguard Transfers were routed through HSBC Bank USA, N.A., in New York.

118.  There were numerous red flags that should have triggered an AML investigation into the transfers. Vanguard's AML transaction monitoring system, if operating appropriately, would have alerted Vanguard to the following facts:

- The entirety of two (2) extremely large investment accounts, totaling approximately $150,000,000, were liquidated for no identifiable business purpose.

- The accounts were liquidated over the course of only three (3) days.

- Less than one week after liquidating the accounts, the Judgment Debtor requested that Vanguard transfer virtually *all* of the liquidated assets to a small local bank in Alabama, a place where the account-holding entities, Rocla and Roclab, had no business purpose for maintaining accounts.

119.  Given all that Vanguard knew, it should have alerted law enforcement authorities and refused to transfer the funds as requested.  Instead of restraining the funds in light of this highly suspicious activity, Vanguard intentionally routed the money to a bank willing to assist the Judgment Debtor in the Scheme to hide his assets overseas when Vanguard had declined to effectuate the overseas transfers itself.

120.  Under the legal doctrine of collective knowledge, *the entire institution is charged with knowledge of information received by any department*, including the knowledge of the Judgment and the 2017 Restraining Notice, the Judgment Debtor's goal of moving the funds overseas, as well as any information found as part of an AML review. Vanguard cannot, therefore,

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM          INDEX NO. 155364/2022
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 06/24/2022

claim ignorance for its failure to restrain the funds.

121.   Vanguard's actions alleged herein, including, but not limited to, opening the Fraudulent Rocla and Roclab Accounts and agreeing to liquidate and transfer the Judgment Debtor's holdings to Oakworth (and, ultimately, out of the country), give rise to a strong presumption of Vanguard's complicity in the Scheme.

### H. Oakworth Transfers the Judgment Debtor's Assets to Liechtenstein

122.   Oakworth opened accounts for the Judgment Debtor knowing that he intended to transfer the funds overseas shortly thereafter. It acted as a conduit, knowing from the start that it was helping the Judgment Debtor to move money out of the United States to defraud creditors.

123.   As part of its AML CIP account opening process, Oakworth is required to ascertain the source of funds and the customer's intentions. Upon learning what the Judgment Debtor intended, Oakworth should have refused to open the account. The simplest of Google searches would have disclosed plaintiff's judgment.

124.   The fact that Oakworth held total customer assets of only approximately $500,000,000 in 2017, its acquisition of $150,000,000 from the Judgment Debtor should have also raised questions from an AML perspective.

125.   On October 24, 2017, shortly after Oakworth received the Vanguard Transfers, a meeting was apparently scheduled among several Oakworth representatives, with the subject of "large deposit." This means that the accounts were already identified as unusual and problematic. Instead of looking further into the issue, the next day, the meeting was cancelled. Upon information and belief, no subsequent meeting was scheduled among Oakworth officers or employees to discuss the transfers from Vanguard.

126.   Less than two (2) weeks later, the Judgment Debtor directed Oakworth to wire

22

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM   INDEX NO. 155364/2022

NYSCEF DOC. NO. 1   RECEIVED NYSCEF: 06/24/2022

approximately $150,000,000 to an account based in Liechtenstein (the "Liechtenstein Account"), through fifteen (15) separate wire transfers of approximately $10,000,000 each (the "Oakworth Transfers"). Had Oakworth's AML program been functioning properly, this instruction—and particularly the instruction to wire the funds in smaller increments—would certainly have generated an AML alert, as it constitutes highly unusual activity with no apparent business purpose so soon after having been transferred to Oakworth. A full investigation should have been conducted.

127.   The Oakworth Transfers were made over the course of several weeks, beginning on or about November 6, 2017. At no point were the transfers halted by Oakworth.

128.   The Oakworth Transfers were routed through TIB – the Independent Bankers Bank, located in Texas, and through Citibank, located in New York.

129.   Upon information and belief, Oakworth was aware, based on its close relationship with Neiswender and communications with the Judgment Debtor, that the Judgment Debtor intended to use the Oakworth accounts to hide his assets from creditors.

130.   Internal email communications show that certain employees of Oakworth expressed to senior officials at Oakworth their concern and hesitancy to process the requested wire transfers of such large sums of money, undoubtedly because the activity was so suspicious. Oakworth's senior officials ignored their concerns.

131.   Upon information and belief, senior officials at Oakworth directed their employees to process the transactions despite those employees' reservations.

132.   The Oakworth Transfers flew in the face of the "low" risk rating that had been assigned to the Rocla and Roclab accounts by Oakworth. The risk rating had been based at least in part on the fact that a "low" volume of transfers, between zero and three (3), were expected to

23

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 1

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

take place in the account. Instead, within a few weeks of the account being opened there were at least fifteen (15) transfers in a short period. The low-risk rating was also based on the expectation of small amounts of monthly cash deposits and withdrawals of $1,000 to $5,000. Instead, $150,000,000 was deposited and then transferred out within a matter of weeks. This activity, which did not comport at all with the recent account opening documentation, should have triggered an immediate investigation, and the risk rating of the account should have been immediately increased to high.

133.    Even after the Oakworth Transfers, Oakworth continued to execute suspicious transfers of substantial funds into and out of the Judgment Debtor's various entity accounts, including transfers to Hong Kong and to issue bank checks, all of which should have raised significant questions and resulted in appropriate inquiries.

134.    For example, on December 27, 2017, the Judgment Debtor directed Oakworth to transfer $257,436.51 from the Roclab account to the ATB & Co. account, and then immediately transfer the funds from the ATB & Co. account to the PBIA & Co. account. The Judgment Debtor explained that he must "follow those instructions in order to comply with the blizzard of instructions I get from counsel in order to keep our friends in Washington happy!" Oakworth should have investigated the business purpose of these transfers. Had Oakworth done so, it would have seen that the activity was classic money laundering, with funds being moved quickly from account to account to obfuscate the origin and to make the money more difficult to trace.

135.    Throughout December, the Judgment Debtor directed multiple other wire transfers and issuance of bank checks, including: (i) the December 18, 2017 transfer of $347,254 from the Roclab account to the ATB & Co. account, followed by the issuance of two (2) bank checks from that account payable to the U.S. Treasury and Sirote & Permutt, PC (the name of Neiswender's

GSG / #1628396v4 / 0150420 - 074019

firm at the time); (ii) the December 19, 2017 transfer of $47,424.00 from the Rocla account to the PBIA & Co. account, followed by issuance of two (2) bank checks from that account to the Residences at Sloan Curve and to UBS Bank USA, *requesting that the payor's name not be included*; (iii) the December 28, 2017 issuance of a check from the PBIA & Co. account payable to "Julian M. Herman," explaining to Oakworth that this is his "official legal name;" and (iv) the December 29, 2017 transfer of $109,960 from the Roclab account to an account in the name of "Asiaciti Trust" in Hong Kong.

136.    On or about January 19, 2018, following the rash of transfers, the Rocla and Roclab accounts at Oakworth, as well as those of IAS & Co., PBIA & Co., IDAJ & Co., and ATB & Co., were closed. The Judgment Debtor no longer had a need for those accounts at that point since his goal of moving all the funds overseas had been accomplished, with Oakworth's overt participation.

I.    **The 2021 Information Subpoena and Subpoena *Duces Tecum***

137.    On December 11, 2019, Plaintiffs took the Judgment Debtor's deposition in Florida.

138.    Plaintiffs questioned the Judgment Debtor concerning numerous entities, including Rocla and Roclab.

139.    The Judgment Debtor testified falsely under oath that he had no relationship to Rocla and Roclab.

140.    During his deposition, the Judgment Debtor read a prepared statement that he refused to testify regarding trusts or business entities not established under the laws of Florida and without assets in Florida. Upon information and belief, the Judgment Debtor's statement reflected the advice received from Neiswender to both hide and perpetuate the Scheme.

141.    In August 2020, based upon, *inter alia*, information learned in connection with a

25

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

subpoena to UBS, Plaintiffs served the Judgment Debtor with a Notice of Intent to serve a subpoena on Vanguard in Florida. The subpoena was issued, over the Judgment Debtor's objection, in October 2020. (the "Vanguard Florida Subpoena").

142.    Vanguard objected to the Vanguard Florida Subpoena on jurisdictional grounds and produced only minimal documents.

143.    On February 9, 2021, Plaintiffs served a second information subpoena on Vanguard in New York (the "2021 Information Subpoena").

144.    Vanguard served a response to the 2021 Information Subpoena dated May 25, 2021, and a supplemental response dated July 7, 2021 (collectively, the "2021 Information Subpoena Response").

145.    Question No. 9 on the 2021 Information Subpoena queried, "does Vanguard have, or did it ever have, any account held by or in the name of any of the following entities": Reloam, LLC, Entity A, LLC, Entity B, LLC, Entity C, LLC, Rocla, LLC, Roclab, LLC, Roclac, LLC, Halec, LLC.

146.    Question No. 10 on the 2021 Information Subpoena requested certain information for each such account, including authorized signatories, opening date, closing date, and disposition of the account holdings.

147.    In response, Vanguard listed the Judgment Debtor as "Signator[ies]" to the Fraudulent Rocla and Roclab Accounts, and further admitted that those accounts were in existence at the time of the service of the 2017 Restraining Notice and 2017 Information Subpoena.

148.    Plaintiffs' receipt of Vanguard's 2021 Information Subpoena Response was the first time Plaintiffs became aware of the existence of the Fraudulent Rocla and Roclab Accounts.

149.    On August 13, 2021, Plaintiffs served a subpoena *duces tecum* on Vanguard in New

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM   INDEX NO. 155364/2022
NYSCEF DOC. NO. 1                                              RECEIVED NYSCEF: 06/24/2022

York (the "2021 Subpoena *Duces Tecum*") requesting, *inter alia*, documents concerning the opening and closing of each identified account, statements, signature cards, documents provided to Vanguard at the time the account was opened, and documents related to Vanguard's customer identity verification process.

150.    The 2021 Subpoena *Duces Tecum* further requested "any and all Vanguard policies and procedures relating to Anti-Money Laundering, Fraud, Financial Crimes Compliance, wire transfers, account opening, customer due diligence, Customer Identification Program, placing holds on accounts and/or implementation of judicial orders and/or restraints."

151.    In response to the 2021 Subpoena *Duces Tecum*, Vanguard for the first time produced documents (the "Vanguard Production") that confirmed the Scheme, contrived by Judgment Debtor and Neiswender and carried out in cooperation with Vanguard and Oakworth to liquidate, and ultimately transfer offshore, the Judgment Debtor's (ill-gotten) staggering assets in the names of sham entities to evade Plaintiffs' efforts to enforce their Judgment. This information directly contradicted Vanguard's response to the 2017 Information Subpoena.

152.    In particular, the documents reveal that (i) Vanguard opened the First Rocla and Roclab Accounts, at the Judgment Debtor's and Neiswender's request, under the Judgment Debtor's legal name and Social Security number; (ii) one day later, at the Judgment Debtor's and Neiswender's request, Vanguard closed those accounts; (iii) approximately one week after that, at the Judgment Debtor's and Neiswender's request, Vanguard opened the Fraudulent Rocla and Roclab Accounts based upon documentation containing a barely-concealed alias and false Social Security number; (iv) Sirote advised Vanguard in writing that Vanguard should not in any way associate the Judgment Debtor with the accounts; (v) Vanguard, in May 2016, directed the Judgment Debtor to resubmit a form seeking wire transfer authority, changing his signed name

27

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

from "Julian M. Herman" (his legal name) to "Maurice J. Herman" (his alias); and (vi) Vanguard processed wire transfers of more than $150,000,000 in a single day to Oakworth, apparently without conducting any investigation into the suspicious transactions and in direct contravention of the 2017 Restraining Notice.

153.   These actions should have led the AML department to conduct a thorough investigation.   An appropriately-conducted AML investigation would have immediately uncovered the fraudulent nature of the activity.

154.   Moreover, Vanguard's receipt of the 2017 Restraining Notice and 2017 Information Subpoena contained detailed information concerning the Judgment Debtor that matched the account owner identified in the first set of account opening documents.

155.   The Vanguard Production further revealed that, as of the date of the 2017 Restraining Notice, the Fraudulent Rocla and Roclab Accounts contained more than sufficient funds with which to satisfy the Judgment.  Vanguard facilitated Judgment Debtor's game of "keep away" with his ill-gotten funds.

156.   Despite its possession of records establishing the Judgment Debtor's interest in the Fraudulent Rocla and Roclab Accounts, Vanguard knowingly failed to restrain those accounts in compliance with the 2017 Restraining Notice, and falsely answered the 2017 Information Subpoena to conceal the existence of those accounts, and the First Rocla and Roclab Accounts, from the Plaintiffs.

157.   Vanguard's concealment of the First Rocla and Roclab Accounts and the Fraudulent Rocla and Roclab Accounts in response to the 2017 Information Subpoena prevented Plaintiffs from taking timely action with respect to those accounts, and allowed the Judgment Debtor to place his assets even further out of Plaintiffs' reach, when they should have been

28

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM    INDEX NO. 155364/2022
NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 06/24/2022

restrained for the benefit of, or at least disclosed to, the Plaintiffs.

**FIRST CAUSE OF ACTION**
**AGAINST VANGUARD**
**Violation of Restraining Notice – CPLR § 5222**
(incorporating all prior allegations)

158.    Vanguard was properly served with the 2017 Restraining Notice and 2017 Information Subpoena.

159.    Vanguard responded to the 2017 Restraining Notice and 2017 Information Subpoena without objection to jurisdiction.

160.    The First Rocla and Roclab Accounts, which contained a name and Social Security number identical to those on the 2017 Information Subpoena and 2017 Restraining Notice, were within the scope of the 2017 Restraining Notice.

161.    The Fraudulent Rocla and Roclab Accounts, on which the Judgment Debtor was also the account owner and signatory, and which contained the hidden assets, were within the scope of the 2017 Information Subpoena and the 2017 Restraining Notice.

162.    The injunctive effect of the 2017 Restraining Notice was still in place on October 10, 2017 when Vanguard began liquidating the Judgment Debtor's holdings.

163.    The injunctive effect of the 2017 Restraining Notice was still in place October 18, 2017, when Vanguard transferred the Judgment Debtor's liquidated assets out of Vanguard, to Oakworth.

164.    Pursuant to CPLR § 5222, a garnishee has no discretion to ignore a restraining notice that is valid on its face.

165.    Violation of a restraining notice by the party served is punishable by contempt and subjects the garnishee to personal liability in a separate plenary action or special proceeding under CPLR Article 52 brought by the aggrieved judgment creditor.

29

GSG / #1628396v4 / 0150420 - 074019

166.    Vanguard intentionally violated the 2017 Restraining Notice.

167.    As a result of Vanguard's failure to identify all accounts on which the Judgment Debtor was a signatory, as required by the 2017 Information Subpoena, Plaintiffs remained unaware of Vanguard's violation of the 2017 Restraining Notice until at least May 25, 2021, when Vanguard responded to the 2021 Information Subpoena.

168.    But for Vanguard's violation of the 2017 Restraining Notice, Plaintiffs would have satisfied the Judgment with the assets in the Fraudulent Rocla and Roclab Accounts.

169.    By reason of the foregoing, Vanguard is liable to Plaintiffs in an amount to be determined at trial, but not less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with applicable interest thereon.

### SECOND CAUSE OF ACTION
### AGAINST THE JUDGMENT DEBTOR AND VANGUARD
#### Fraud/Fraudulent Misrepresentation
(incorporating all prior allegations)

170.    The Judgment Debtor, for the specific purpose of hindering Plaintiffs' efforts to enforce the Judgment, willfully and maliciously misrepresented to Plaintiffs that he had no interest in, and conducted no business with, Rocla and Roclab.

171.    The Judgment Debtor, for the specific purpose of hindering Plaintiffs' efforts to enforce the Judgment, willfully and maliciously concealed from Plaintiffs the existence of assets available to satisfy the Judgment, while simultaneously transferring those assets to Vanguard, then Oakworth, and then Liechtenstein.

172.    Vanguard, at the direction of the Judgment Debtor, Neiswender, and the Dentons Defendants, intentionally provided false information, and concealed information, in response to the 2017 Information Subpoena. Vanguard stated that it held a single account in which the Judgment Debtor had an interest or was an authorized signatory within three (3) years of the service

30

INDEX NO. 155364/2022

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 06/24/2022

of the 2017 Restraining Notice, in the name J. Maurice Herman Revocable Trust, despite its knowledge of the First Rocla and Roclab Accounts and the Fraudulent Rocla and Roclab Accounts.

173.   Vanguard, at the direction of the Judgment Debtor, Neiswender, and the Dentons Defendants, knowingly and willfully concealed the existence of the Fraudulent Rocla and Roclab Accounts in its response to the 2017 Information Subpoena, despite its knowledge that the Judgment Debtor was the beneficial owner of, and sole signatory on, those accounts.

174.   In reliance on Vanguard's misrepresentation and omissions, Plaintiffs did not take any further action in 2017 to enforce the 2017 Restraining Notice with respect to the Fraudulent Rocla and Rocla Accounts.

175.   As a result of the Judgment Debtor's and Vanguard's fraud, Plaintiffs have been damaged in an amount to be determined at trial, but not less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with applicable interest thereon.

### THIRD CAUSE OF ACTION
### AGAINST VANGUARD
**(Negligence/Negligent Misrepresentation)**
(incorporating all prior allegations)

176.   Vanguard, as the recipient of the 2017 Restraining Notice, owed a duty to Plaintiffs, as judgment creditors, to restrain the Fraudulent Rocla and Roclab Accounts.

177.   Vanguard owed a duty to Plaintiffs, as judgment creditors, to fully and accurately respond to the 2017 Information Subpoena.

178.   Vanguard had a legal obligation to comply with AML regulations that require a financial institution to verify the identity of all account holders, including the beneficial owners of entities opening accounts.

179.   Vanguard allowed the Judgment Debtor to open the Fraudulent Rocla and Roclab

31

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

Accounts despite highly suspicious circumstances. It opened the accounts despite the impossibility of verifying the identity of the account holders due to the fact that an alias and false Social Security number were used, in violation of the Customer Identification requirements of the AML regulations.

180. Vanguard had a legal obligation to comply with AML regulations that require it to investigate suspicious transactions, including those that involve the international transfer of substantial sums of money.

181. Vanguard, over the course of only a few days, liquidated the Judgment Debtor's investments, valued at more than $150,000,000, and transferred them to Oakworth. Given that it was, at the time, on-going activity, pursuant to AML requirements Vanguard should have immediately made law enforcement aware of the activity and should have taken steps to stop the transfers from taking place.

182. Vanguard failed to restrain the Fraudulent Rocla and Roclab Accounts, despite having information in its possession establishing that the Fraudulent Rocla and Roclab Accounts were subject to the 2017 Restraining Notice.

183. Vanguard affirmatively misrepresented, in its response to the 2017 Information Subpoena, that the J. Maurice Herman Revocable Trust was the sole account at Vanguard in which the Judgment Debtor "may have an interest," whether under the name of the Judgment Debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within three (3) years prior thereto, "including but not limited to any account for which the judgment debtor has or had signatory power."

184. Vanguard failed to disclose, in its response to the 2017 Information Subpoena, the existence of the Fraudulent Rocla and Roclab Accounts.

QSG / #1628396v4 / 0150420 - 074019

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

185.     Vanguard failed to act with reasonable diligence and care of a financial institution in its position, particularly in light of its obligations under the AML.

186.     By reason of Vanguard's negligent acts and omissions, Plaintiffs have been damaged in an amount to be determined at trial, but not less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with applicable interest thereon.

### FOURTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### Conspiracy to Commit Fraud
(incorporating all prior allegations)

187.     Defendants conspired with one another to execute a fraudulent Scheme to conceal the existence of brokerage accounts containing the Judgment Debtor's assets, and to transfer those assets beyond the reach of the Plaintiffs, thwarting Plaintiffs' efforts to enforce the Judgment.

188.     Defendants each willfully and knowingly engaged in one or more overt acts in furtherance of the Scheme, as alleged above.

189.     Neiswender, in the course of his duties as a Partner at Sirote, masterminded the Scheme together with the Judgment Debtor, including, upon information and belief, advising the Judgment Debtor to lie during his deposition about the disposition of his assets and otherwise directing the Judgment Debtor to wrongfully refuse to answer related questions.

190.     Neiswender, as the Judgment Debtor's authorized agent and in the course of his duties as a Partner at Sirote, formed Rocla and Roclab as conduits to funnel the Judgment Debtor's assets, with the intent and purpose to defraud Plaintiffs.

191.     The Judgment Debtor and Neiswender conspired to provide false information in connection with the opening of the Fraudulent Rocla and Roclab Accounts and did in fact provide such false information.

33

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM          INDEX NO. 155364/2022

NYSCEF DOC. NO. 1                                           RECEIVED NYSCEF: 06/24/2022

192.    Vanguard conspired with the Judgment Debtor and Neiswender to fail to conduct or to act upon the required AML "Know Your Customer" due diligence, which showed that the Fraudulent Rocla and Roclab accounts were founded on false information.

193.    Vanguard conspired with the Judgment Debtor, Neiswender, and Oakworth to liquidate the assets in the Fraudulent Rocla and Roclab Accounts and transfer the assets to Oakworth, despite knowing that those assets were subject to the 2017 Restraining Notice, and that the Judgment Debtor intended to further transfer those assets to Liechtenstein.

194.    Vanguard conspired with the Judgment Debtor, Neiswender, and Oakworth to transfer $150,000,000 of the Judgment Debtor's assets to Oakworth, without first alerting law enforcement officials to a suspicious transaction.

195.    The conspiracy was ongoing, as Vanguard continued to make suspicious transfers from the Fraudulent Rocla and Roclab Accounts in the weeks following the initial transfers.

196.    Oakworth conspired with Vanguard, the Judgment Debtor and Neiswender to receive the Vanguard Transfers, and soon thereafter to transfer the assets to Liechtenstein, despite its knowledge of the Judgment Debtor's fraudulent purpose.

197.    Oakworth conspired with the Vanguard, the Judgment Debtor, Neiswender to execute on the Judgment Debtor's request, just weeks after receiving the funds, to wire a total of $150,000,000 to Liechtenstein, without first alerting law enforcement officials to a suspicious transaction.

198.    The conspiracy was ongoing, as Oakworth wired the funds over the course of several weeks.

199.    Rocla and Roclab conspired with the other Defendants to implement the Judgment Debtor's and Neiswender's scheme, by serving as conduits for the laundering of the Judgment

GSO / #1628396v4 / 0150420 - 074019

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM   INDEX NO. 155364/2022
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 06/24/2022

Debtor's assets.

200.    The Judgment Debtor, in conspiracy with Neiswender, willfully and knowingly perjured himself during his 2019 deposition concerning the existence and location of his assets to thwart Plaintiffs in execution of the Judgment.

201.    Vanguard conspired with the Judgment Debtor and Neiswender to provide false answers in response to the 2017 Information Subpoena.

202.    Vanguard, in conspiracy with Neiswender, willfully and intentionally withheld information from its response to the 2017 Information Subpoena that would have revealed the existence of the Fraudulent Rocla and Roclab Accounts.

203.    By reason of their conspiracy to defraud Plaintiffs with respect to the existence of bank and brokerage accounts containing the Judgment Debtor's assets, Defendants are jointly and severally liable to Plaintiffs in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with applicable interest thereon.

**FIFTH CAUSE OF ACTION**
**AGAINST VANGUARD, OAKWORTH, NEISWENDER,**
**THE DENTONS DEFENDANTS, ROCLA and ROCLAB**
**<u>Aiding & Abetting Fraud and/or Fraudulent Concealment</u>**
(incorporating all prior allegations)

204.    As detailed above, Vanguard, Oakworth, Neiswender, the Dentons Defendants, Rocla and Roclab had knowledge of the Judgment against the Judgment Debtor.

205.    As detailed above, Vanguard, Oakworth, Neiswender, the Dentons Defendants, Rocla and Roclab had knowledge that the Judgment Debtor intended to use the Fraudulent Rocla and Roclab Accounts and the Oakworth accounts to shield his assets from Plaintiffs.

206.    As detailed above, Vanguard, Oakworth, Neiswender, the Dentons Defendants,

35

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM          INDEX NO. 155364/2022

NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 06/24/2022

Rocla and Roclab rendered substantial assistance to the Judgment Debtor in aid of his efforts to fraudulently conceal his assets from Plaintiffs.

207.   Plaintiffs have been damaged as a result.

208.   By reason of the foregoing, Vanguard, Oakworth, Neiswender, the Dentons Defendants, Rocla and Roclab are jointly and severally liable to Plaintiffs in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with interest from the date of the accrual of the claim.

**SIXTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**Violation of RICO (18 U.S.C. §1962(c)) Predicated on Mail Fraud (18 U.S.C. §1341),**
**Wire Fraud (18 U.S.C. §1343), Money Laundering (18 U.S.C. §1956),**
**and Violation of Bank Secrecy Act (31 U.S.C. §5311, _et. seq._)**
(incorporating all prior allegations)

209.   Defendants are "persons" subject to liability within the meaning of 18 U.S.C. §1961(3).

210.   Defendants violated 18 U.S.C. §1962(c) because they were "employed by or associated with [an] enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering."

211.   The Defendants' association in furtherance of the Scheme to conceal and transfer the Judgment Debtor's assets constitutes an "enterprise" within the meaning of 18 U.S.C. §1961(4).

212.   Defendants each participated in the operation or management of the enterprise.

213.   Defendants, in violation of 18 U.S.C. §1343, each intentionally and repeatedly used interstate and international wires to further the Scheme to defraud Plaintiffs.

36

GSG / #1628396v4 / 0150420 - 074019

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

214.    Specifically, Defendants directed or otherwise caused the Vanguard Transfers and the Oakworth Transfers, in which more than $150,000,000 was transferred, first from Vanguard to Oakworth, and then from Oakworth to the Liechtenstein Account.

215.    Defendants, in violation of 18 U.S.C. §§1341, each intentionally and repeatedly used interstate and international mail in furtherance of the Scheme to defraud the Plaintiffs.

216.    Specifically, Defendants sent and received documents through interstate and international mails to open the Fraudulent Rocla and Roclab Accounts and the Oakworth accounts and to effectuate the Vanguard Transfers and the Oakworth Transfers.

217.    Defendants, with knowledge that the funds involved represented the proceeds of unlawful activity, conducted financial transactions with the knowledge that such transactions were designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

218.    The foregoing conduct constitutes predicate acts of racketeering activity within the meaning of 18 USC §1961(1)(B).

219.    Defendants Vanguard and Oakworth, in violation of the Currency and Foreign Transaction Reporting Act (a/k/a Bank Secrecy Act) either intentionally or negligently failed to implement processes and procedures required of financial institutions, including investigation into the beneficial ownership of entity accounts and investigation of suspicious transactions, in connection with the Scheme.

220.    The foregoing constitutes a predicate act pursuant to 18 USC §1961(1)(E).

221.    The foregoing predicate acts were perpetrated from at least December 2015 through December 2017.

222.    The predicate acts constitute a pattern of racketeering activity within the meaning

GSG / #1628396v4 / 0150420 - 074019

of 18 USC §1961(5).

223. By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with interest from the date of the accrual of the claim.

## SEVENTH CAUSE OF ACTION
### AGAINST THE JUDGMENT DEBTOR, ROCLA AND ROCLAB
### Declaratory Judgment/Alter Ego Liability/Pierce the Corporate Veil
(incorporating all prior allegations)

224. After the Supreme Court defaulted the Judgment Debtor for liability in the underlying action, Neiswender and the Judgment Debtor formed Rocla and Roclab for the specific purpose of shielding the Judgment Debtor's assets from Plaintiffs and to avoid paying the Judgment.

225. The sole member and manager of Rocla was EntityA, whose sole member and manager was Neiswender.

226. The sole member and manager of Roclab was EntityB, whose sole member and manager was Neiswender.

227. The sole authorized signatory on the Fraudulent Rocla and Roclab Accounts at Vanguard was the Judgment Debtor.

228. Upon information and belief, the sole authorized signatory on the Rocla and Roclab accounts at Oakworth was the Judgment Debtor.

229. Rocla and Roclab were terminated as corporate entities under the law of the State of South Dakota on or about June 9, 2021.

230. Upon information and belief, neither Rocla nor Roclab had any legitimate business operations, and existed solely for the purpose of perpetrating a fraud on Plaintiffs.

38

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM   INDEX NO. 155364/2022
NYSCEF DOC. NO. 1   RECEIVED NYSCEF: 06/24/2022

231.   The Judgment Debtor directed the transfer of his assets from the UBS brokerage accounts to the Fraudulent Rocla and Roclab Accounts at Vanguard.

232.   The Judgment Debtor directed the transfer of his assets from the Fraudulent Rocla and Roclab Accounts to Oakworth.

233.   Upon information and belief, the Judgment Debtor directed the transfer of his assets in the Oakworth accounts to the Liechtenstein Account.

234.   The Judgment Debtor exercised complete domination over Rocla and Roclab with respect to the formation of the entities, the UBS Transfers, the Vanguard Transfers, and the Oakworth Transfers.

235.   The Judgment Debtor's domination of Rocla and Roclab was used to defraud Plaintiffs by shielding his assets from enforcement of the Judgment.

236.   The Judgment Debtor's domination over his assets titled in the names of these two (2) alter-ego entities continued unabated until their legal existence was extinguished.

237.   Rocla and Roclab were merely alter egos of the Judgment Debtor.

238.   Based upon the foregoing, Plaintiffs are entitled to a declaratory judgment piercing the corporate veils of Rocla and Roclab, and declaring that the assets of Rocla and Roclab, wherever and in whatever form they may be held, belong to judgment creditors and may be used to satisfy the Judgment against the Judgment Debtor.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

a)   on the first cause of action for relief against Vanguard for violation of the 2017 Restraining Notice, in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with applicable interest thereon;

b)   on the second cause of action for relief against the Judgment Debtor and Vanguard for fraud and/or fraudulent concealment, in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the

39

Judgment, together with applicable interest thereon;

c)   on the third cause of action against Vanguard for negligence, in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with applicable interest thereon;

d)   on the fourth cause of action against all Defendants for conspiracy to commit fraud and/or fraudulent concealment, in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with applicable interest thereon;

e)   on the fifth cause of action for relief against Vanguard, Oakworth, Neiswender, the Dentons Defendants, Rocla and Roclab for aiding and abetting fraud, in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with interest from the date of the accrual of the claim;

f)   On the sixth claim for relief against Defendants for violation of 18 U.S.C. § 1962(c) in an amount to be determined at trial, but in no event less than the Judgment amount, less sums previously recovered in partial satisfaction of the Judgment, together with applicable interest thereon;

g)   On the seventh claim for relief against the Judgment Debtor, Rocla and Roclab, for a declaratory judgment piercing the corporate veils of Rocla and Roclab, declaring that their assets may be used to satisfy the Judgment against the Judgment Debtor; and

h)   for such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       June 24, 2022

JASPAN SCHLESINGER LLP
Attorneys for Plaintiffs

By:   Steven R. Schlesinger
      Gayle S. Gerson
      300 Garden City Plaza, 5th Floor
      Garden City, New York 11530
      (516) 746-8000

40

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

## VERIFICATION

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF NEW YORK )

    **HON. ARIEL E. BELEN (Ret.),** being duly sworn says:

    I am a plaintiff of the action herein, in my capacity as Temporary Co-Trustee of the Trust created by Harold Herman dated March 1, 1990, and as Temporary Trustee of the Trust created by Rosemarie Herman dated November 27, 1991. I have read the annexed **VERIFIED COMPLAINT,** know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

                                     _AEBelen_
                                     **ARIEL E. BELEN**

Sworn to before me this
24th day of June, 2022.

_Samira Nahaz_ 06/24/2022
Notary Public

41

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 2

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

# EXHIBIT 1

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 1695

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
-----------------------------------------------------------------X
ROSEMARIE A. HERMAN, individually, as beneficiary
of the trust created by Harold Herman as Grantor under
agreement dated March 1, 1990 and as beneficiary of the
trust created by Rosemarie A. Herman as Grantor dated
November 27, 1991 et al.,

                      Plaintiffs,

        -against-

JULIAN MAURICE HERMAN; J. MAURICE
HERMAN, as Trustee of the J. Maurice Herman
Revocable Trust dated October 28, 2002; J. MAURICE
HERMAN, as Trustee of the trust created by Harold
Herman as Grantor under agreement dated March 1,
1990; et al.,

                      Defendants.
-----------------------------------------------------------------X
JULIAN MAURICE HERMAN,

                Third-Party Plaintiffs,

        -against-

JOSEPH ESMAIL and SOLITA N. HERMAN,

                Third-Party Defendants.
-----------------------------------------------------------------X

Index No.: 650205/2011

**ORDER AND JUDGMENT**

    **WHEREAS**, on April 28, 2017 the Court issued a Decision and Order, which was
entered on May 2, 2017 (the "Judgment Order"), ordering that a judgment be entered against
Julian Maurice Herman ("Maurice") as follows:

    "ORDERED that upon service upon him of a copy of this order with notice of entry, the
Clerk is directed enter judgment against Julian Maurice Herman as follows:

    1. Julian Maurice Herman is hereby enjoined to cause Windsor Plaza, LLC, a Delaware
limited liability company, to execute and record a deed conveying the real property located at
952 Fifth Avenue, New York, NY, to Julian Maurice Herman and Ariel E. Belen, as temporary

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM      INDEX NO. 155364/2022
NYSCEF DOC. NO. 1695                                    RECEIVED NYSCEF: 06/24/2022

trustee of the trust created by Rosemarie A. Herman on November 27, 1991, as tenants in

common;

   2. in favor of Ariel E. Belen, as temporary trustee of the trust created by Rosemarie A.

Herman on November 27, 1991, in the amount of $32,198,836.59, plus prejudgment interest at

9% from January 2, 2003 in the amount of $ *_____, and $3,742,596.90, for a total        *See
                                                                                            adjudication
sum of $ *_____, with statutory interest from entry of judgment at 9%; and               paragraph

   3. in favor of Rosemarie A. Herman and Ariel E. Belen, as trustees of the Trust created

by Harold Herman on March 1, 1990, in the amount of $10,732,945.50, plus prejudgment

interest at 9% from January 2, 2003 in the amount of $ *_____, for a total sum of

$ *_____, with statutory interest from entry of judgment at 9%" (the "Decretal

Directive"); and

   WHEREAS, upon submitting a proposed judgment to the Clerk, as directed in the

Decretal Directive, the New York County Court Clerk advised that it cannot enter a judgment for

declaratory relief, but that only the Court can enter judgment for declaratory relief; and

   WHEREAS, during a conference call by and among the parties and the Court on May

22, 2017, the Court directed Plaintiffs to submit a proposed order amending the April 28, 2017

Decision and Order so as to permit Plaintiffs in the above-captioned action to submit a proposed

judgment directly to the Court for consideration and entry; it is hereby

   ORDERED that the Decretal Directive is stricken and replaced with the following:

   "ORDERED and ADJUDGED that:

   1. Julian Maurice Herman is hereby enjoined to cause Windsor Plaza, LLC, a Delaware

limited liability company, to execute and record a deed conveying the real property located at

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM     INDEX NO. 155364/2022

NYSCEF DOC. NO. 1695                                 RECEIVED NYSCEF: 06/24/2022

952 Fifth Avenue, New York, NY, to Julian Maurice Herman and Ariel E. Belen, as temporary

trustee of the trust created by Rosemarie A. Herman on November 27, 1991, as tenants in

common;

    2. Ariel E. Belen, residing at ████████████████████████ as temporary

trustee of the trust created by Rosemarie A. Herman on November 27, 1991, shall recover from

Julian Maurice Herman, residing at ██████████████████████ *180* the amount of

$32,198,836.59, plus prejudgment interest at 9% from January 2, 2003 in the amount of

$ *42,722,122.12*, and $3,742,596.90, for a total sum of $ *78,663,555.61*, with statutory

interest from entry of judgment at 9%; and

    3. Rosemarie A. Herman, residing at ██████████████████████████ *003* and

Ariel E. Belen, residing at ████████████████████, as trustees of the Trust

created by Harold Herman on March 1, 1990, shall recover from Julian Maurice Herman,

residing a ████████████████ the amount of $10,732,945.50, plus

prejudgment interest at 9% from January 2, 2003 in the amount of $ *14,240,707.33*, for a

total sum of $ *24,973,652.83*, with statutory interest from entry of judgment at 9%."; and

    Said judgment-creditors shall have execution thereon.

Dated: September 19, 2017          ENTER:

                                      Shirley Werner Kornreich, J.S.C.

FILED

SEP 26 2017

COUNTY CLERKS OFFICE
NEW YORK

*as a Judgment*

                         *Clerk*

3

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 2695

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/23/2022

650205/2011

Order + Judgment
Attorney for Judgment Creditor
Law Offices of Craig Avedisian, P.C.
60 East 42ND Street
40th Floor
New York, NY 10165

2 - 1
FILED AND DOCKETED
SEP 26 2017
AT 3:04 P M
N.Y., CO. CLKS OFFICE
as a Judgment

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 3

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

# EXHIBIT 2

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 3
INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
------------------------------------------------------------------------X
ROSEMARIE A. HERMAN, individually, as beneficiary of
the trust created by Harold Herman as Grantor under
agreement dated March 1, 1990 and as beneficiary of the
trust created by Rosemarie A. Herman as Grantor dated
November 27, 1991 et al.,

                                      Plaintiffs,

                     -against-

JULIAN MAURICE HERMAN; J. MAURICE HERMAN,
as Trustee of the J. Maurice Herman Revocable Trust dated
October 28, 2002; J. MAURICE HERMAN, as Trustee of
the trust created by Harold Herman as Grantor under
agreement dated March 1, 1990; MICHAEL OFFIT;
MICHAEL OFFIT, as Trustee of the trust created by Harold
Herman as Grantor under agreement dated March 1, 1990;
MICHAEL OFFIT, as Trustee of the trust created by
Rosemarie A. Herman as Grantor dated November 27,
1991; et al.,

                                    Defendants.
------------------------------------------------------------------------X
JULIAN MAURICE HERMAN,

                    Third-Party Plaintiff,

             -against-

JOSEPH ESMAIL and SOLITA N. HERMAN,

                    Third-Party Defendants.
------------------------------------------------------------------------X

Index No. 650205/2011

Assigned Justice
Hon. Shirley W. Kornreich

**INFORMATION
SUBPOENA WITH
RESTRAINING NOTICE**

Index No.: 590354/2013

TO:  **VANGUARD**
      PO Box 2600
      Valley Forge, Pennsylvania 19842

      **JUDGMENT DEBTOR:**  Julian Maurice Herman

                                              3771

*GREETINGS:*

      **WHEREAS,** in an action in the **Supreme Court of the State of New York, County of**

SLM/D1244737v1/M056994/C0150420

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 3

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

**New York,** between ROSEMARIE A. HERMAN, individually, as beneficiary of the trust created by Harold Herman as Grantor under agreement dated March 1, 1990 and as beneficiary of the trust created by Rosemarie A. Herman as Grantor dated November 27, 1991 and on behalf of MAYFAIR YORK LLC, WINDSOR PLAZA LLC, a New York Limited Liability Company, AVON BARD LLC, MERIT MANAGEMENT LLC, PRIMROSE MANAGEMENT LLC, KEYSTONE MANAGEMENT LLC by their 50% owner of their membership interests; ROSEMARIE A. HERMAN as Natural Guardian for GAVIN I. ESMAIL and JESSE A. ESMAIL, individually, as beneficiaries of the trust created by Harold Herman as Grantor under agreement dated March 1, 1990 and as beneficiaries of the trust created by Rosemarie A. Herman as Grantor dated November 27, 1991, as Plaintiffs, and JULIAN MAURICE HERMAN; J. MAURICE HERMAN, as Trustee of the J. Maurice Herman Revocable Trust dated October 28, 2002; J. MAURICE HERMAN, as Trustee of the trust created by Harold Herman as Grantor under agreement dated March 1, 1990; MICHAEL OFFIT; MICHAEL OFFIT, as Trustee of the trust created by Harold Herman as Grantor under agreement dated March 1, 1990; MICHAEL OFFIT, as Trustee of the trust created by Rosemarie A. Herman as Grantor dated November 27, 1991; MAYFAIR YORK LLC; WINDSOR PLAZA LLC, a New York Limited Liability Company; WINDSOR PLAZA LLC, a Delaware Limited Liability Company; AVON BARD LLC; MERIT MANAGEMENT LLC; PRIMROSE MANAGEMENT LLC; KEYSTONE MANAGEMENT LLC; CONSOLIDATED REALTY HOLDINGS LLC; SETON INDUSTRIAL CORP.; ARDENT NVESTMENTS LLC; TRUST FOR ARCHITECTURAL EASEMENTS; "ABC COMPANY # 1" through "ABC COMPANY #10", the last ten entities being fictitious and unknown to the Plaintiffs, the entities intended being the entities, if any, involved in the acts or omissions described in the Complaint;

2

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM   INDEX NO. 155364/2022

NYSCEF DOC. NO. 3                                                    RECEIVED NYSCEF: 06/24/2022

and "JOHN DOE # 1" through "JOHN DOE #10", the last ten names being fictitious and unknown to the Plaintiffs, the persons intended being the Persons, if any, involved in the acts or omissions described in the Complaint, as Defendants, and JULIAN MAURICE HERMAN, as Third-Party Plaintiff, and JOSEPH ESMAIL and SOLITA N. HERMAN, as Third-Party Defendants, who are all the parties named in said action, a judgment was entered on September 26, 2017 (i) in favor of **ARIEL E. BELEN**, as temporary trustee of the trust created by Rosemarie Herman on November 27, 1991, Judgment Creditor, as and against **JULIAN MAURICE HERMAN**, Judgment Debtor, in the amount of $78,663,555.61, and (ii) in favor of **ROSEMARIE A. HERMAN** and **ARIEL E. BELEN**, as trustees of the Trust created by Harold Herman on March 1, 1900, as and against **JULIAN MAURICE HERMAN**, as judgment creditor, on the amount of $24,973,652.83, for a total sum of $103,637,208.44, with statutory interest of 9% from entry of the judgment, to wit:  September 26, 2017, of which $103,637,208.44 remains due and unpaid;

NOW, **THEREFORE WE COMMAND YOU**, that you answer in writing under oath, separately and fully, each question in the questionnaire accompanying this subpoena, each answer referring to the question to which it responds; and that you return the answers together with the original questions within 7 days after your receipt of the questions and this subpoena.

**TAKE NOTICE** that false swearing or failure to comply with this subpoena is punishable as a contempt of court.

## RESTRAINING NOTICE

**WHEREAS**, it appears that you owe a debt to the judgment debtor or are in possession or in custody of property in which the judgment debtor has an interest;

\*       **including but not limited to any and all accounts in your possession and/or control due to, owned by, or otherwise in which the debtor, JULIAN MAURICE HERMAN, has an ownership interest, or is signatory thereon.**

3

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM    INDEX NO. 155364/2022

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/24/2022

**TAKE NOTICE** that pursuant to CPLR 5222(b), which is set forth in full herein, you are hereby forbidden to make or suffer any sale, assignment or transfer of, or any interference with any property in which you have an interest, except as therein provided.

**TAKE FURTHER NOTICE** that this notice also covers all property in which the judgment debtor has an interest hereafter coming into your possession or custody, and all debts hereafter coming due from you to the judgment debtor.

## CIVIL PRACTICE LAW AND RULES

Section 5222(b) Effect of restraint; prohibition of transfer; duration. A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be subject

4

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM    INDEX NO. 155364/2022

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 06/24/2022

to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs. A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

**TAKE FURTHER NOTICE** that disobedience of this Restraining Notice is punishable as a contempt of court.

Dated: Garden City, New York
September 27, 2017

LAW OFFICES OF CRAIG AVEDISIAN, P.C.

By: _Craig Avedisian (vs)_
CRAIG AVEDISIAN
One Grand Central Place
60 East 42nd Street, 40th Floor
New York, New York 10165
(212) 687-8360

JASPAN SCHLESINGER LLP

By: _Natasha Shishov_
NATASHA SHISHOV
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000

Co-Counsel for Judgment Creditors

5

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM          INDEX NO. 155364/2022
NYSCEF DOC. NO. 3                                         RECEIVED NYSCEF: 06/24/2022

## CERTIFICATION

I, Natasha Shishov, Esq., hereby certify that this information subpoena complies with Rule 5224 of the Civil Practice Law and Rules, and Section 601 of the General Business Law, and that I have a reasonable belief that the party receiving this subpoena has in its possession information about the Debtor(s) that will assist the Creditor(s) in collecting the judgment.

NATASHA SHISHOV

6

SLM/D1244737v1/M056994/C0150420

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 3

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

® **T 421**—Exemption notice (p.1) and claim form (p.2), CPLR 5222-a(b), enforcement of judgments, 1-09     ©2009 by **Blumberg**Excelsior, Inc., Publisher, NYC 10013     www.blumberg.com

# EXEMPTION NOTICE
### *as required by New York Law*

## Your bank account is restrained or "frozen."

The attached Restraining Notice or Notice of Levy by Execution has been issued against your bank account. You are receiving this notice because a creditor has obtained a money judgment against you, and one or more of your bank accounts has been restrained to pay the judgment. A money judgment is a court's decision that you owe money to a creditor. You should be aware that FUTURE DEPOSITS into your account(s) might also be restrained if you do not respond to this notice.

You may be able to "vacate" (remove) the judgment. If the judgment is vacated, your bank account will be released. Consult an attorney (including free legal services) or visit the Court Clerk for more information about how to do this.

Under state and federal law, certain types of funds cannot be taken from your bank account to pay a judgment. Such money is said to be "exempt."

## Does your bank account contain any of the following types of funds?

1. Social security;
2. Social security disability (SSD);
3. Supplemental security income (SSI);
4. Public assistance (welfare);
5. Income earned while receiving SSI or public assistance;
6. Veterans benefits;
7. Unemployment insurance;
8. Payments from pensions and retirement accounts;
9. Disability benefits;
10. Income earned in the last 60 days (90% of which is exempt);
11. Workers' compensation benefits;
12. Child support;
13. Spousal support or maintenance (alimony);
14. Railroad retirement; and/or
15. Black lung benefits.

If YES, you can claim that your money is exempt and cannot be taken. To make the claim, you must
(a) complete the **EXEMPTION CLAIM FORM** attached;
(b) deliver or mail the form to the bank with the restrained or "frozen" account; and
(c) deliver or mail the form to the creditor or its attorney at the address listed on the form.

You must send the forms within 20 DAYS of the postmarked date on the envelope holding this notice. You may be able to get your account released faster if you send to the creditor or its attorney written proof that your money is exempt. Proof can include an award letter from the government, an annual statement from your pension, pay stubs, copies of checks, bank records showing the last two months of account activity, or other papers showing that the money in your bank account is exempt. If you send the creditor's attorney proof that the money in your account is exempt, the attorney must release that money within seven days. You do not need an attorney to make an exemption claim using the form"

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

INDEX NO. 155364/2022

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 06/24/2022

STATE OF NEW YORK, COUNTY OF                                    SS:

being duly sworn, says: that the deponent is not a party

herein, is over 18 years of age and resides at

That on                                    at No.
deponent served the within restraining notice, exemption notice and two exemption claim forms on

**CORPORATION**
**1.**        the banking institution therein named, by delivering a true copy thereof to
personally, whom deponent knew to be the
of said institution: deponent knew the banking institution so served to be said banking institution.

**SERVICE BY MAIL**
**2.** ☐      by mailing a copy of same, accompanied by a copy in a securely sealed postpaid wrapper properly addressed to

**Strike out (a) or (b)**
at
(a) by registered mail, return receipt requested. Deponent delivered said wrapper to the Registry Clerk at the
post office and paid the requisite fee. Return Receipt No.                              is attached hereto.
(b) by certified mail, return receipt requested. Deponent deposited said wrapper with the requisite postage
and return receipt card affixed, in—a post office—official depository under the care and custody of the United
States Postal Service within the State of New York. Return Receipt No.
is attached hereto.

Deponent describes the individual served as follows:

| ☐ Male | ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

Sworn to before me on                    ......................................                    ......................................
                                         *Print name beneath signature.*                    *LICENSE NO.*

*Index No.* 650205/2011

# Restraining Notice, Exemption Notice and Exemption Claim Forms

ROSEMARIE A. HERMAN, et al.,   Index No.: 650205/2011
          Plaintiffs,
    -against-

JULIAN MAURICE HERMAN, et al.
          Defendants.

JULIAN MAURICE HERMAN,
          Third-Party Plaintiff,
    -against-
JOSEPH ESMAIL, et al.,
          Third-Party Defendants.

LAW OFFICES OF
JASPAN SCHLESINGER LLP
*Attorney(s) for Judgment Creditors*
*Office and Post Office Address*
300 GARDEN CITY PLAZA
GARDEN CITY, NEW YORK 11530
Attn: Natasha Shishov Esq.
(516) 746-8000

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 3

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

® **T 422**— Exemption claim form, CPLR 5222-a(b).
enforcement of judgments, 1-09

©2009 BY **Blumberg**Excelsior, Inc., PUBLISHER, NYC 10013
www.blumberg.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

*Index No.* 650205/2011

ROSEMARIE HERMAN, et al.                    Plaintiff,

-against-

JULIAN MAURICE HERMAN, et al.,              Defendant.

AND A THIRD-PARTY ACTION

## EXEMPTION CLAIM FORM

**Name and address of judgment creditor or attorney**
*To be completed by judgment creditor or attorney.*
**Address A** JASPAN SCHLESINGER LLP
                    300 GARDEN CITY PLAZA
                    GARDEN CITY, NY 11530
                    ATTN: NATASHA SHISHOV, ESQ.

**Name and address of financial institution**
*To be completed by judgment creditor or attorney.*
**Address B** VANGUARD
                    PO Box 2600
                    Valley Forge, Pennsylvania 319842

Directions: To claim that some or all of the funds in your account are exempt, complete both copies of this form, and make one copy for yourself. Mail or deliver one form to **Address A** and one form to **Address B** within twenty days of the date on the envelope holding this notice.

**If you have any documents, such as an award letter, an annual statement from your pension, paystubs, copies of checks or bank records showing the last two months of account activity, include copies of the documents with this form. Your account may be released more quickly.

I state that my account contains the following type(s) of funds (*check all that apply*):

☐ Social security
☐ Social security disability (SSD)
☐ Supplemental security income (SSI)
☐ Public assistance
☐ Wages while receiving SSI or public assistance
☐ Veterans benefits
☐ Unemployment insurance

☐ Income earned in the last 60 days (90% of which is exempt)
☐ Child support
☐ Spousal support or maintenance (alimony)
☐ Workers' compensation
☐ Railroad retirement or black lung benefits
☐ Other (describe exemption):
☐ Payments from pensions and retirement accounts

I request that any correspondence to me regarding my claim be sent to the following address:
*Fill in your complete address.* _____

_____

**I certify under penalty of perjury that the statement above is true to the best of my knowledge and belief.**

Date: _____                    _____
                                   Signature of Judgment Debtor

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 3

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

STATE OF NEW YORK, COUNTY OF        SS:

being duly sworn, says: that the deponent is not a party

herein, is over 18 years of age and resides at

That on        at No.

deponent served the within restraining notice, exemption notice and two exemption claim forms on

**CORPORATION**

1. ☐    the banking institution therein named, by delivering a true copy thereof to
personally, whom deponent knew to be the
of said institution: deponent knew the banking institution so served to be said banking institution.

**SERVICE BY MAIL**

by mailing a copy of same, accompanied by a copy in a securely sealed postpaid wrapper properly addressed to

2. ☐    at
**Strike out (a) or (b)**    (a) by registered mail, return receipt requested. Deponent delivered said wrapper to the Registry Clerk at the
post office and paid the requisite fee. Return Receipt No.        is attached hereto.
(b) by certified mail, return receipt requested. Deponent deposited said wrapper with the requisite postage
and return receipt card affixed, in—a post office—official depository under the care and custody of the United
States Postal Service within the State of New York. Return Receipt No.
is attached hereto.

Deponent describes the individual served as follows:

| | | | | | |
|---|---|---|---|---|---|
| ☐ Male | ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

Sworn to before me on       ............................................    ...............................
                        *Print name beneath signature.*       *LICENSE NO.*

Index No. 650205/2011

## Restraining Notice, Exemption Notice and Exemption Claim Forms

ROSEMARIE A. HERMAN, et al.,   Index No.: 650205/2011
       Plaintiffs,

   -against-

JULIAN MAURICE HERMAN, et al.
       Defendants.

JULIAN MAURICE HERMAN,
       Third-Party Plaintiff,

   -against-

JOSEPH ESMAIL, et al.,
       Third-Party Defendants.

**LAW OFFICES OF**

**JASPAN SCHLESINGER LLP**

*Attorney(s) for* Judgment Creditors
*Office and Post Office Address*
300 GARDEN CITY PLAZA
GARDEN CITY, NEW YORK 11530
Attn.: Natasha Shishov, Esq.
(516) 746-8000

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM          INDEX NO. 155364/2022

NYSCEF DOC. NO. 3                                          RECEIVED NYSCEF: 06/24/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
-------------------------------------------------------------------X
ROSEMARIE A. HERMAN, individually, as beneficiary of
the trust created by Harold Herman as Grantor under
agreement dated March 1, 1990 and as beneficiary of the          Index No. 650205/2011
trust created by Rosemarie A. Herman as Grantor dated
November 27, 1991 et al.,                                        Assigned Justice
                                                                 Hon. Shirley W. Kornreich
                                        Plaintiffs,

                                                                 **QUESTIONS AND**
              -against-                                          **ANSWERS IN**
                                                                 **CONNECTION WITH**
JULIAN MAURICE HERMAN; J. MAURICE HERMAN,                        **INFORMATION**
as Trustee of the J. Maurice Herman Revocable Trust dated        **SUBPOENA**
October 28, 2002; J. MAURICE HERMAN, as Trustee of
the trust created by Harold Herman as Grantor under
agreement dated March 1, 1990; MICHAEL OFFIT;
MICHAEL OFFIT, as Trustee of the trust created by Harold
Herman as Grantor under agreement dated March 1, 1990;
MICHAEL OFFIT, as Trustee of the trust created by
Rosemarie A. Herman as Grantor dated November 27,
1991; et al.,
                                        Defendants.
-------------------------------------------------------------------X

JULIAN MAURICE HERMAN,

                                        Third-Party Plaintiff,    Index No.: 590354/2013

              -against-

JOSEPH ESMAIL and SOLITA N. HERMAN,

                                        Third-Party Defendants.
-------------------------------------------------------------------X

Re:   JULIAN MAURICE HERMAN, ████████████████████
      Judgment Debtor

STATE OF NEW YORK     ) ss.:
                      )
COUNTY OF _____  )

_____, being duly sworn, deposes and says:  that deponent is the
_____ of _____, recipient of an
information subpoena herein and of the original and a copy of questions accompanying said subpoena.
The answers set forth below are made from information obtained from the records of the recipient:

SLM/D1244696v1/M056994/C0150420

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 3

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

Q. No. 1    Are any of the assets of the debtor, in your possession or care, subject to liens,
            attachments or other encumbrances?                      A.    No. 1

Q. No. 2    What are the full details of the same in regard to each asset?    A.    No. 2

Q. No. 3    Do you have any other transactions with the debtor, directly or indirectly, as a
            result of which the debtor may now have, or any in the future, become entitled to?
                                                                   A.    No. 3

Q. No. 4    What are the full details of each such transaction?

Q. No. 5    Has the debtor given you a statement of his financial condition?    A.    No. 5

Q. No. 6    What assets are disclosed therein (on in the alternative supply a copy)?

Q. No. 7    Do you and the debtor have a financial arrangement in which you remit payment
            for services performed by him?                          A.    No. 7
            What is the nature of such arrangement?

Q. No. 8    Have you provided defendant with any W2s, K-1s, or other such document which
            reported fees and/or income received by him for the last three (3) years?
                                                                   A.    No. 8
            What income is disclosed therein (on in the alternative supply a copy)?

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM          INDEX NO. 155364/2022
NYSCEF DOC. NO. 3                                            RECEIVED NYSCEF: 06/24/2022

Q. No. 9    Do you have a record of any account in which the judgment debtor may have an
            interest, whether under the name of the debtor, under a trade or corporate name,
            or in association with others, as of the date of the subpoena or within three (3)
            years prior thereto, including but not limited to any account for which
            the judgment debtor has or had signatory power?              A.    No. 9


Q. No. 10   As to such account, which is the exact title of the account, the date opened,
            amounts presently on deposit; if closed, the amount of deposit when closed and
            the dated closed?                                            A.    No. 10

| TITLE | DATE OPENED | AMOUNT ON DEPOSIT | DATE CLOSED |
|-------|-------------|-------------------|-------------|
|       |             |                   |             |


Q. No. 11   Do you have a record of any safe deposit box in which the judgment debtor may have an
            interest, whether under the name of the debtor, under a trade or corporate name, on in
            association with others, as of the date of the subpoena or within
            one (1) year prior thereto?                                  A.    No. 11

Q. No. 12   Do your hold collateral in which the debtor has or may
            have an interest?                                            A.    No. 12

Q. No. 13   What is the description and value of each item of collateral:  A.    No. 13

| DESCRIPTION | VALUE |
|-------------|-------|
|             |       |


Q. No. 14   What interest does the debtor appear to have in each item of
            collateral?                                                  A.    No. 14

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 4

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

# EXHIBIT 3

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 4

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022



P.O. Box 2600
Valley Forge, PA 19482-2600

www.vanguard.com

October 3, 2017

*Via FedEx*
Natasha Shishov, Esq.
Jaspan Schlesinger, LLP
300 Garden City Plaza, FL 5
Garden City, NY 11530-3324

RE:   Rosemarie A. Herman v. Julian Maurice Herman, et al.
       Index No.: 590354/2013

Dear Ms. Shishov:

The Vanguard Group, Inc. ("Vanguard"), hereby encloses its answers in connection with the "Information Subpoena with Restraining Notice" issued in the above-captioned matter.

No open accounts in the name of Judgment debtor Julian Maurice Herman were located to restrain.

If you have any questions concerning this matter, please contact me at 610-669-9374.

Sincerely,

Miles Gilpin
Legal Analyst
Legal Department

Enclosure

cc:   Julian Maurice Herman (w/copy of subpoena)

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM   INDEX NO. 155364/2022
NYSCEF DOC. NO. 4                                    RECEIVED NYSCEF: 06/24/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
-------------------------------------------------------------------------X

ROSEMARIE A. HERMAN, individually, as beneficiary of
the trust created by Harold Herman as Grantor under
agreement dated March 1, 1990 and as beneficiary of the
trust created by Rosemarie A. Herman as Grantor dated
November 27, 1991 et al.,

                                       Plaintiffs,

-against-

JULIAN MAURICE HERMAN; J. MAURICE HERMAN,
as Trustee of the J. Maurice Herman Revocable Trust dated
October 28, 2002; J. MAURICE HERMAN, as Trustee of
the trust created by Harold Herman as Grantor under
agreement dated March 1, 1990; MICHAEL OFFIT;
MICHAEL OFFIT, as Trustee of the trust created by Harold
Herman as Grantor under agreement dated March 1, 1990;
MICHAEL OFFIT, as Trustee of the trust created by
Rosemarie A. Herman as Grantor dated November 27,
1991; et al.,

                                       Defendants.
-------------------------------------------------------------------------X

JULIAN MAURICE HERMAN,

                           Third-Party Plaintiff,

-against-

JOSEPH ESMAIL and SOLITA N. HERMAN,

                          Third-Party Defendants.
-------------------------------------------------------------------------X

Index No. 650205/2011

Assigned Justice
Hon. Shirley W. Kornreich

**QUESTIONS AND
ANSWERS IN
CONNECTION WITH
INFORMATION
SUBPOENA**

Index No.: 590354/2013

Re:   JULIAN MAURICE HERMAN, ██████████████████████
      Judgment Debtor

*PENNSYLVANIA*
~~STATE OF NEW YORK~~   ) ss.:
                  )
COUNTY OF *CHESTER*  )

     *Miles Gilpin*   , being duly sworn, deposes and says: that deponent is *the*
*Legal Analyst*   of *The Vanguard Group, Inc.* recipient of an
information subpoena herein and of the original and a copy of questions accompanying said subpoena.
The answers set forth below are made from information obtained from the records of the recipient:

SLM/D1244696v1/M056994/C0150420

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM
NYSCEF DOC. NO. 4

INDEX NO. 155364/2022
RECEIVED NYSCEF: 06/24/2022

Q. No. 1    Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or other encumbrances?    A.    No. 1

Q. No. 2    What are the full details of the same in regard to each asset?    A.    No. 2

A. No. 1. No open accounts held.
A. No. 2. Not applicable.

Q. No. 3    Do you have any other transactions with the debtor, directly or indirectly, as a result of which the debtor may now have, or any in the future, become entitled to?    A.    No. 3

A. No. 3. No

Q. No. 4    What are the full details of each such transaction?

A. No. 4 Not Applicable

Q. No. 5    Has the debtor given you a statement of his financial condition?    A.    No. 5

Q. No. 6    What assets are disclosed therein (on in the alternative supply a copy)?

A. No. 5. No
A No. 6 Not Applicable

Q. No. 7    Do you and the debtor have a financial arrangement in which you remit payment for services performed by him?    A.    No. 7
What is the nature of such arrangement?

A. No 7. No.

Q. No. 8    Have you provided defendant with any W2s, K-1s, or other such document which reported fees and/or income received by him for the last three (3) years?    A.    No. 8
What income is disclosed therein (on in the alternative supply a copy)?

A. No 8. No

FILED: NEW YORK COUNTY CLERK 06/24/2022 04:47 PM

NYSCEF DOC. NO. 4

INDEX NO. 155364/2022

RECEIVED NYSCEF: 06/24/2022

Q. No. 9    Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within three (3) years prior thereto, including but not limited to any account for which the judgment debtor has or had signatory power?    A.    No. 9

*Yes*

Q. No. 10    As to such account, which is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount of deposit when closed and the dated closed?    A.    No. 10

| TITLE | DATE OPENED | AMOUNT ON DEPOSIT | DATE CLOSED |
|---|---|---|---|
| *UA 10-28-02 J. MAURICE HERMAN REVOCABLE TRUST JULIAN MAURICE HERMAN, TRUSTEE* | *6-30-08* | *0.00* | *4-8-2016* |

Q. No. 11    Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, on in association with others, as of the date of the subpoena or within one (1) year prior thereto?    A.    No. 11

*A. No 11   No*

Q. No. 12    Do your hold collateral in which the debtor has or may have an interest?    *A.  No 12.   No*    A.    No. 12

Q. No. 13    What is the description and value of each item of collateral:    A.    No. 13

*A. No 13    Not   Applicable*

| DESCRIPTION | VALUE |
|---|---|
| *N/A* | |

Q. No. 14    What interest does the debtor appear to have in each item of collateral?    A.    No. 14

*A. No 14.   Not   Applicable*

_____   *10-3-2017*

*MILES GILPIN*

*Signed and sworn to before me on this 3rd day of October, 20*

_____

*Notary Public*

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lisa S. Rawus, Notary Public
Tredyffrin Twp., Chester County
My Commission Expires Oct. 7, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

SLM/D1244696v1/M056994/C0150420

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** NEW YORK
-----------------------------------------------------------------x
ARIEL E. BELEN,  et al.,

                                    Plaintiff/Petitioner,

        - against -                                         Index No.155364/2022
JULIAN M. HERMAN,  et al.,

                                    Defendant/Respondent.
-----------------------------------------------------------------x

## NOTICE OF ELECTRONIC FILING
### (Mandatory Case)
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

> 1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

> 2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney**:
  Give this Notice to your attorney.  (Attorneys: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney**:
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: 06/28/2022
_____

Gayle S. Gerson, Esq.
Name
Jaspan Schlesinger LLP

Firm Name

300 Garden City Plaza, 5th Floor
Address

Garden City, New York 11530

(516) 746-8000
Phone

ggerson@jaspanllp.com
E-Mail

To:   Defendants
_____

_____

_____

6/6/18

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------------X

ARIEL E. BELEN, as Temporary Co-Trustee of the          Index No.: 155364/2022
Trust created by Harold Herman dated March 1, 1990
and as Temporary Trustee of the Trust created by
Rosemarie Herman dated November 27, 1991,
and ROSEMARIE HERMAN, as Co-Trustee of the
Trust created by Harold Herman dated March 1, 1990,

                              Plaintiffs,

        -   against -

JULIAN M. HERMAN, ROCLA, LLC, ROCLAB, LLC,
THE VANGURD GROUP, INC., OAKWORTH
CAPITAL BANK, DENTONS SIROTE, PC,
DENTONS US LLP, and HOWARD NEISWENDER,

                              Defendants.
--------------------------------------------------------------------X

---

## RETURN ON SERVICE

I certify that I personally delivered a copy of the Summons and Complaint to

_____ in Jefferson County, Alabama on

_____.


_____                          _____
Date                                     Server's Signature


_____         _____
Address of Server                       Type of Process Server