UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=========================================X         **Case No. 22-cv-6455 (AKH)**
ARIEL E. BELEN, as Temporary Co-Trustee of the
Trust created by Harold Herman dated March 1, 1990
and as Temporary Trustee of the Trust created by
Rosemarie Herman dated November 27, 1991,
and ROSEMARIE HERMAN, as Co-Trustee of the
Trust created by Harold Herman dated March 1, 1990,

      Plaintiffs,

-against-

JULIAN M. HERMAN, ROCLA, LLC, ROCLAB, LLC,
THE VANGUARD GROUP, INC., OAKWORTH
CAPITAL BANK, DENTONS SIROTE, PC,
DENTONS US LLP, and HOWARD NEISWENDER,

      Defendants.
=========================================X

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT, JULIAN M. HERMAN'S, MOTION TO DISMISS PLAINTIFFS' FIRST
### AMENDED COMPLAINT

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendant Julian M. Herman*
By: Jack Kallus, Esq.
40 Exchange Place, 20th Floor
New York, New York 10005
Telephone (954) 302-2360
Facsimile (888) 464-7982

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS ................................. 2

III.  APPLICABLE LEGAL STANDARDS ..................................................................... 4

   A.   *Fed. R. Civ. P. 12(b)(6)* ...................................................................................... 4

   B.   *Fed. R. Civ. P. 12(e)* .......................................................................................... 5

IV.   ARGUMENT ............................................................................................................. 6

   A.   *Plaintiffs' Second Claim for Relief fails to plead sufficient facts demonstrating reasonable reliance and damages and should be dismissed.* ................................. 6

      1.   **Plaintiffs fail to plead reasonable reliance and damages, warranting dismissal of the Second Claim for Relief under Rule 12(b)(6).** ............................................... 7

      2.   **Alternatively, Plaintiffs should be required to plead a more definite statement under Rule 12(e) when the Second Claim for Relief rests upon unintelligible facts.** ...... 9

   B.   *Plaintiffs' Fourth Claim for Relief fails to plead the underlying fraud and is legally deficient.* ............................................................................................................... 9

   C.   *Plaintiffs' Sixth Claim for Relief because they do not have standing, because it is time-barred and because the claim violates Rule 9(b).* ................................................. 11

      1.   **Plaintiffs lack standing when they suffered no injury to their "business or property."** ........................................................................................................... 11

      2.   **Plaintiffs' Sixth Claim for Relief is time-barred.** ........................................... 19

      3.   **Plaintiffs' Sixth Claim for Relief does not satisfy the requirements of Fed. R. Civ. P. 9(b).** ............................................................................................................... 23

   D.   *Plaintiffs' Seventh Claim for Relief fails when it does not plead sufficient facts in support and when the allegations for the Seventh Cause of Action violate Rule 9(b).* ......... 26

      1.   **Plaintiffs' claim fails when Defendant Herman is not the owner of Rocla/Roclab, when he did not engage in fraud/wrongful activity and when Plaintiffs suffered no injury.** ............................................................................................................... 27

      2.   **Plaintiffs' Seventh Claim for Relief violates Rule 9(b).** ................................. 28

   E.   *Plaintiffs' Eighth Claim for Relief fails as it does not assert a legally cognizable claim.* 29

V.    CONCLUSION ....................................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Accord Rescuecom Corp. v. Google Inc.,* 562 F.3d 123 (2d Cir.2009) ...................................... 5

*Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346 (1st Cir. 1997)......................................... 29

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005)......... 10, 29

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143 (1987) ....................19-20

*Angermeir v. Cohen*, 14 F.Supp.3d 134 (S.D.N.Y. 2014) ....................................................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 5

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988)................................14, 19-20, 22

*Bd. of Managers of 195 Hudson St. Condominium v. Jeffrey M. Brown Assoc., Inc.*,
    652 F.Supp.2d 463 (S.D.N.Y. 2009).......................................................................26-27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................4-5

*Berger v. L.L. Bean, Inc.*, 351 F. Supp.3d 256, 260 (E.D.N.Y. 2018)..................................... 30

*Berman, Trustee for Estate of Michael S. Goldberg, LLC v. LaBonte*,
    622 B.R. 503 (D. Conn. 2020) ...................................................................................... 12

*Boyle v. U.S.*, 556 U.S. 938 (2009) ......................................................................................... 23

*Childers v. New York & Presbyterian Hosp.*, 36 F. Supp.3d 292 (S.D.N.Y. 2014) .................. 6

*Combs v. Ryan's Coal Co.*, 785 F.2d 970 (11th Cir. 1986) ..................................................... 29

*Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998).........................................................................5

*D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) ............................................................ 12

*Dodds v. Cigna Securities, Inc.*, 12 F.3d 346 (2d Cir. 1993).................................................. 20

*Dover Ltd. v. A.B. Watley, Inc.*, 423 F.Supp.2d 303 (S.D.N.Y. 2006) .................................... 10

*EED Holdings v Palmer Johnson Acquisition Corp.*,
    228 F.R.D. 508 (S.D.N.Y. 2005) ................................................................................. 26

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014) .............................20-21

*Elsevier, Inc. v. Grossman*, 77 F.Supp.3d 331 (S.D.N.Y. 2015) ............................................ 20

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)..................................................................7

*Farey-Jones v. Buckingham*, 132 F.Supp.2d 92 (E.D.N.Y. 2001)...........................................10

*First Capital Asset Management, Inc. v. Brickellbush, Inc.*,
    219 F.Supp.2d 576 (S.D.N.Y. 2002)..................................................................12

*First Capital Asset Mngt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ....................23

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994).....................12, 14

*Gerstenfeld v. Nitsberg*, 190 F.R.D. 127 (S.D.N.Y. 1999) .....................................................24

*Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006).................17

*Goldfine v. Sichenzia*, 118 F.Supp.2d 392 (S.D.N.Y. 2000) .............................................12-13

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...................................11

*Hilao v. Estate of Marcos*, 95 F.3d 848 (9th Cir. 1996) .........................................................29

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
    146 F.3d 66 (2d Cir. 1998)..................................................................17

*In re Argo Communications Corp.*, 134 B.R. 776 (Bkrtcy.S.D.N.Y. 1991)...............................5

*In re Cabrini Medical Center*, 489 B.R. 7 (S.D.N.Y.) .............................................................27

*In re Currency Conversion Fee Antitrust Litigation*,
    265 F.Supp.2d 385 (S.D.N.Y. 2003)..................................................................27

*In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56 (2d Cir. 1998).........................20

*Kerr v. Thomas*, 14CIV9168KBFHBP, 2017 WL 485041 (S.D.N.Y. Feb. 3, 2017) ..........29-30

*King v. Simpson,* 189 F.3d 284 (2d Cir. 1999) ..........................................................................4

*Kirtz v. Wiggin*, 538 F. Supp. 1218 (E.D. Mo. 1982) ...............................................................30

*Koch v Christie's Intern. PLC*, 699 F.3d 141 (2d Cir 2012)....................................................20

*Lama Holding Co. v. Smith Barney*, 88 NY2d 413 (1996).........................................................7

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ...................24

*Mangiafico v. Blumenthal,* 471 F.3d 391 (2d Cir.2006)............................................................5

iv

*Martin Hilti Family Trust v. Knoedler Gallery, LLC,*
    386 F.Supp.3d 319 (S.D.N.Y. 2019)...................................................................26

*Matter of Morris v. N.Y. State Dept. of Taxation and Fin.*, 603 N.Y.2d 135 (1993)................26

*Mayfield v. Asta Funding, Inc.*, 95 F.Supp.3d 685 (S.D.N.Y. 2015)........................................23

*McDonald v Elkholy*, 2017 WL 3503385 (E.D.N.Y. 2017) ....................................................6-7

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ......................................................24

*Moss v. Morgan Stanley*, 719 F.2d 5 (2d Cir. 1983)................................................................23

*Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003)..................................................12

*NYKCool A.B. v. Pacific Fruit Inc.*, 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012)................29

*NYKCool A.B. v. Pacific Intern. Svcs., Inc.*, 2012 WL 5462611 (S.D.N.Y. 2012) .............13-17

*O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674 (2d Cir. 1991)............................24

*Ofori–Tenkorang v. American Int'l Group, Inc.,* 460 F.3d 296 (2d Cir.2006) .........................5

*Oil and Gas Ventures-First 1958 Fund, Limited v. Kung,*
    250 F.Supp. 744 (S.D.N.Y. 1966) ...................................................................6

*Pasternak v. Dow Kim*, 961 F.Supp.2d 593 (S.D.N.Y. 2013) .................................................7-8

*Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F. Supp. 2d 439 (S.D.N.Y. 2005)............5-6

*Ritter v. Klisivitch*, 2008 WL 2967627 (E.D.N.Y. July 30, 2008)...........................................19

*Rotella v. Wood*, 528 U.S. 549 (2000) ...................................................................................20

*Runaway Dev. Group v. Pentagen Techs. Intern. Ltd.,*
    396 F. Supp. 2d 471 (S.D.N.Y. 2005)...............................................................31

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) ......................................................11

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972) .............................................................. 10, 29

*Silvercreek Management, Inc. v. Citigroup, Inc.,*
    248 F.Supp.3d 428 (S.D.N.Y. 2017)..............................................................9-10

*Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178 (2d Cir. 2008).........................24

*Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993).........................14-18

*Teltronics Services, Inc. v. LM Ericsson Telecommunications, Inc.,*
    642 F.2d 31 (2d Cir. 1981)................................................................................4

*Terra Securities ASA Konkursbo v. Citigroup, Inc.,*
    820 F.Supp.2d 541 (S.D.N.Y. 2011)...............................................................7

*Thai v. Cayre Grp., Ltd.*, 726 F. Supp.2d 323 (S.D.N.Y. 2010)................................5

*U.S. v. Shellef*, 507 F.3d 82 (2d Cir. 2007).............................................................24

*United States v. Potter*, 19 F.R.D. 89 (S.D.N.Y. 1956).............................................30

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,*
    933 F.2d 131 (2d. Cir. 1991)...........................................................................27

*Xethanol Corp. v. Deutsche Bank Securities, Inc.*, 2009 WL 6040571 (S.D.N.Y. 2009) .......... 6

*Yaroni v. Pintec Tech. Holdings Ltd.*, 2022 WL 1215450 (S.D.N.Y 2022) .............................20

**STATUTES**

18 U.S.C.A. § 1962............................................................................................11, 21-22

18 U.S.C.A. § 1964...................................................................................................11

28 U.S.C. § 1658(a)..................................................................................................19

N.Y. Debtor and Creditor Law § 276-a ...................................................................13

SDCL § 47-34A-404.1...............................................................................................27

**RULES**

Fed. R. Civ. P. 12 ..................................................................................4, 5, 11, 17, 19

Fed. R. Civ. P. 9 ..........................................................................................6-7, 10, 23, 26

Fed. R. Civ. P. 69 ...................................................................................................30

N.Y. C.P.L.R. 5225(b) (McKinney) ...................................................................30-31

## I.   **PRELIMINARY STATEMENT**

Defendant Julian M. Herman ("Defendant Herman" or "Judgment Debtor"), by his attorneys, Kaufman, Dolowich & Voluck, LLP, respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the Second Claim for Relief (Fraud/Fraudulent Misrepresentation), the Fourth Claim for Relief (Conspiracy to Commit Fraud), the Sixth Claim for Relief (Violation of RICO and Conspiracy to Violate RICO - Predicated on Mail Fraud, Wire Fraud, Receipt and Transfer of Money Obtained by Fraud, and Violation of Currency and Foreign Transactions Reporting Act[1]), the Seventh Claim for Relief (Declaratory Judgment/Alter Ego Liability/Pierce the Corporate Veil), and the Eighth Claim for Relief (Seeking an Order of Repatriation), pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, Motion for More Definite Statement as to the aforesaid Causes pursuant to Fed. R. Civ. P. 12(e).

Dismissal of the Second Claim for Relief (fraud) is warranted when Plaintiffs fail to plead sufficient facts demonstrating reasonable reliance and damages and dismissal of the Fourth Claim for Relief (conspiracy to commit fraud) is warranted when Plaintiffs fail to plead the underlying fraud and when such claim, as pled, is legally deficient. Further, dismissal of the Sixth Claim for Relief (RICO claim) is warranted when Plaintiffs lack standing or, in the alternative, when such claim is time-barred and when the claim violates Rule 9(b). Dismissal of the Seventh Claim for Relief (alter ego/pierce corporate veil) is warranted when Defendant Herman is not the owner of Rocla, LLC or Roclab, LLC, when Plaintiffs fail to plead the underlying fraud and when Plaintiffs' have suffered no injury. Finally, dismissal of the Eighth Claim for Relief (Order of Repatriation) is warranted when neither Federal Law nor New York Law recognize an independent cause of

---

[1] This predicate is directed at Defendants Vanguard and Oakworth. *See* First Amended Complaint, at ¶ 317-323. Accordingly, this Motion will not address the Bank Secrecy Act.

action for repatriation of funds and when Federal Courts do not collect state court judgments. The First Amended Complaint must be dismissed in its entirety as against Defendant Herman, with prejudice, but in the event the Court denies Defendant Herman's request to dismiss the aforesaid Claims, Plaintiffs should be required to bring forth a more definite statement as to the Claims for Relief asserted against Defendant Herman when each of these Claims are not sufficiently pled.

## II.   SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS[2]

According to the First Amended Complaint, on September 19, 2017, judgment was granted, in the amount of $103,637,208.44, as against Defendant Herman in the Supreme Court of the State of New York, County of New York. *See* First Amended Complaint, at ¶ 1. The judgment concerned Defendant Herman's purported defrauding of his sister, Rosemarie Herman's, one-half interest in a trust containing Manhattan apartment buildings. *See* First Amended Complaint, at ¶ 1. Plaintiffs claim Defendant Herman conspired with co-Defendants to conceal his assets from satisfying the money judgment. *See* First Amended Complaint, at ¶ 2. Specifically, the conspiracy entailed the "formation of more than a dozen entities wholly-owned and controlled by the Judgment Debtor and his attorney, Neiswender, and use of those entities for the singular purpose of concealing, transferring, and encumbering his assets to defraud Plaintiffs, as well as other judgment creditors" (named the "Scheme").[3] *See* First Amended Complaint, at ¶¶ 2-3.

---

[2] The purpose of this section is to summarize Plaintiffs' allegations.  The Court should not construe this recitation to be an admission of any of the allegations in Plaintiffs' Amended Complaint.

[3] Assuming for purposes of this Motion that Judgment Debtor "defrauded" Plaintiffs, which is denied, their "defrauding" scheme underlying this entire lawsuit defies logic. Indeed, they argue that all transfers arising after the money judgment must have been fraudulent. However, they fail to admit that before the judgment was entered, in their July 17, 2015 Affirmation in Support of Motion Pursuant to CPLR 5229 (filed in Index No. 650205/2011, *Supreme Court of the State of New York County of New York;* ¶ 10 n. 8), Plaintiffs affirmatively stated that Judgment Debtor's 100% ownership in real property located at 952 Fifth Avenue was sufficient to cover any judgment. In which case, Defendant Herman could not have "fraudulently" transferred his remaining assets. It is a matter of court record that Plaintiffs expressed 952 Fifth Avenue was sufficient to cover any judgment.

The underlying action concerned two trusts holding six (6) prime residential buildings in Manhattan (the "properties"): a 1990 Trust and 1991 Trust (collectively "Trusts"). *See* First Amended Complaint, at ¶¶ 53-54. Plaintiff Ariel Belen is a Temporary Trustee of the 1991 Trust and a Temporary Co-Trustee of the 1990 Trust. *See* First Amended Complaint, at ¶ 34. Plaintiff Rosemarie Herman ("Rosemarie") is a Co-Trustee and an income beneficiary of the 1990 & 1991 Trusts. *See* First Amended Complaint, at ¶ 35. The underlying money judgment arose from a default judgment. *See* First Amended Complaint, at ¶ 63. In or about 1997, Defendant Herman transferred the properties to limited liability companies he owned. *See* First Amended Complaint, at ¶ 55. Defendant sold five of the six properties for $101,925,000 at a private sale in 2002, realizing a profit of approximately $92,000,000. *See* First Amended Complaint, at ¶¶ 56-57. According to the First Amended Complaint, by 2015, after multiple transfers in purported alter-ego entities, the bulk of Defendant Herman's assets held in a self-settled revocable trust under the fictitious name Marstack & Co. ("Marstack"), and in an account titled to Revenue Funding Services, LLC ("RFS"). *See* Amended Complaint, at ¶¶ 59-60. The pleading then alleges that in 2016, Defendant transferred approximately $139,600,000 from the Marstack account and $10,700,00 from the RFS account at UBS to Rocla, LLC ("Rocla") and Roclab, LLCs ("Roclab") accounts at The Vanguard Group, Inc. ("Vanguard"). *See* First Amended Complaint, at ¶ 109.

It is alleged that, in or about September 2017 (after entry of the Judgment), Defendants Herman, Neiswender and Vanguard "communicated" to wire transfer the Rocla and Roclab account assets (valued over $150,000,000) offshore. *See* First Amended Complaint, at ¶ 132. According to the pleading, Defendant Herman, with Defendant Neiswender's assistance, opened the Rocla and Roclab accounts at Oakworth. *See* First Amended Complaint, at ¶ 141. From October 10, 2017, through October 13, 2017, Defendant Herman purportedly liquidated his Rocla and Roclab accounts at Vanguard and transferred them to Oakworth. *See* First Amended

3

Complaint, at ¶¶ 147-151. Sometime in November 2017, it is alleged that Defendant Herman, *inter alia*, directed Oakworth to wire approximately $150 million to accounts in the nations of Liechtenstein and other offshore accounts. *See* First Amended Complaint, at ¶¶ 160, 162; 169-170. On or about January 19, 2018, the Rocla and Roclab accounts were purportedly closed at Oakworth. *See* First Amended Complaint, at ¶ 172.

On December 11, 2019, Plaintiffs deposed Defendant Herman. *See* First Amended Complaint, at ¶ 200. It is alleged that Defendant Herman testified falsely that "he had no relationship to Rocla and Roclab." *See* Amended Complaint, at ¶ 140. In furtherance of the Scheme, it is also alleged that Defendant Herman (at the direction of Defendant Neiswender) read a prepared statement "that he refused to testify regarding trusts or business entities not established under the laws of Florida and without assets in Florida." *See* Amended Complaint, at ¶ 203.

The pleading also includes allegations related to unnamed parties to this lawsuit. *See* First Amended Complaint, at ¶¶ 3, 175-199, 223-236.

## III.   APPLICABLE LEGAL STANDARDS

### A.  *Fed. R. Civ. P. 12(b)(6)*

Under the now well-established *Twombly* standard, a Complaint should be dismissed if it does not state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is a dismissal on the merits of the action, a determination that the facts alleged in the Complaint fail to state a claim upon which relief may be granted. *See Teltronics Services, Inc. v. LM Ericsson Telecommunications, Inc.,* 642 F.2d 31, 34 (2d Cir. 1981). Therefore, the issue before the court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir. 1999). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal

feasibility of the Complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

To survive a motion to dismiss, Plaintiff's allegations must meet a standard of "plausibility." *Twombly,* 550 U.S. at 564. A claim satisfies the plausibility standard "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Pleading facts that are "merely consistent with a defendant's liability *Id.* (quotation marks and citations omitted) is insufficient to "nudge[ ] [a Plaintiff's] claims across the line from the conceivable to plausible." *Twombly,* 550 U.S. at 570. A "Complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006). In deciding a motion to dismiss, the court must "accept as true all of the factual allegations contained in the Complaint" *Twombly,* 550 U.S. at 572. *Accord Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2d Cir.2009) and "draw all reasonable inferences in Plaintiff's favor." *Ofori–Tenkorang v. American Int'l Group, Inc.,* 460 F.3d 296, 298 (2d Cir.2006). However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 328 (S.D.N.Y. 2010).

B.  *Fed. R. Civ. P. 12(e)*

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." F.R.C.P. 12(e). The purpose of a Rule 12(e) motion is to strike the unintelligibility, rather than lack of detail, of a pleading. *In re Argo Communications Corp.*, 134 B.R. 776, 798 (Bkrtcy.S.D.N.Y. 1991). In *Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F. Supp. 2d 439, 443

(S.D.N.Y. 2005), the United States District Court, Southern District of New York stated concerning a Rule 12(e) motion that:

> The pleading must be sufficiently intelligible for the district court to make out one or more potentially viable theories on which the claimant might proceed; in other words, the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

Citing 5C *Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure* § 1376 at 311 (3d ed. 2004) (footnote omitted). Further, the notice of motion under Rule 12(e) must "point out the defects complained of and the details desired." *Oil and Gas Ventures-First 1958 Fund, Limited v. Kung*, 250 F.Supp. 744, 758 (S.D.N.Y. 1966).

## IV.    ARGUMENT

    A. *Plaintiffs' Second Claim for Relief fails to plead sufficient facts demonstrating reasonable reliance and damages and should be dismissed.*

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To do so, the pleading must specify (1) those statements the plaintiff thinks are fraudulent, (2) the speaker, (3) where and when the statements were made and (4) why plaintiff believes the statements to be fraudulent. *Xethanol Corp. v. Deutsche Bank Securities, Inc.*, 2009 WL 6040571 *1 (S.D.N.Y. 2009).

"Under New York law, the elements of a claim for fraud are: (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp.3d 292, 309 (S.D.N.Y. 2014) (finding plaintiff pled sufficient facts against motion to dismiss) (internal quotations omitted). The elements for fraudulent misrepresentation and fraud are similar. *McDonald v Elkholy*, 2017 WL

3503385 *10 (E.D.N.Y. 2017) (finding plaintiff did not plead sufficient facts to survive a motion to dismiss) (internal quotations omitted).

In determining a plaintiff's reasonable reliance, the court may "consider the entire context of the transaction, including . . . sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). The sophistication of the plaintiff may be determined as a matter of law, which bears upon the reasonableness of plaintiff's reliance on defendant's alleged misrepresentations. *See e.g., Terra Securities ASA Konkursbo v. Citigroup, Inc.*, 820 F.Supp.2d 541, 545-48 (S.D.N.Y. 2011) (determining plaintiffs' sophistication rendered their reliance unjustifiable for failure to pursue further documentation or independent analysis). "In New York, damages in fraud cases are limited by the 'out-of-pocket rule,' which provides that plaintiffs in fraud cases may only recover damages 'for what they lost because of the fraud, not . . . for what they might have gained . . . . Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud.'" *Pasternak v. Dow Kim*, 961 F.Supp.2d 593, 596 (S.D.N.Y. 2013); *Lama Holding Co. v. Smith Barney*, 88 NY2d 413, 421 (1996).

1. **Plaintiffs fail to plead reasonable reliance and damages, warranting dismissal of the Second Claim for Relief under Rule 12(b)(6).**

Plaintiffs' Second Claim for Relief is solely based upon the alleged misrepresentation/omissions at Defendant Herman's December 11, 2019, Deposition concerning asset transfers that purportedly occurred back in 2017. *See* First Amended Complaint, at ¶¶ 200-203, 249-250, 254. Indeed, Defendant Herman purportedly "willfully and maliciously concealed" his assets from Plaintiffs on December 11, 2019, while "simultaneously" transferring those same assets to Vanguard, then Oakworth, and later Liechtenstein and beyond in calendar years 2016 and

2017. *See* First Amended Complaint, at ¶¶ 91, 132-141, 149, 156, 169-172, 250. Plaintiffs' Second Claim for Relief fails as a matter of law for several reasons.

Plaintiffs fail to plead, with specificity, any facts regarding reasonable reliance. Plaintiffs do not describe an instance where they "reasonably relied" upon representations/omissions made by Defendant Herman. In fact, considering the entire alleged transaction between Plaintiffs and Defendant Herman, Plaintiffs could not have relied upon an alleged defrauding act in 2019, two to three years *after* the results (or damages) of the defrauding act. In other words, Plaintiffs plead a fraud/fraudulent misrepresentation claim arising in 2019 seeking 2016-2017 "damages." Plaintiffs cannot plead Defendant Herman defrauded them in 2019 while "simultaneously" transferring assets in 2016-2017. Due this factual inconsistency, Plaintiffs' Second Claim for Relief must fail.

Also, in New York, Plaintiffs may only recover for what they lost *because of* Defendant Herman's purported fraud – *that the fraud resulted in damages. Pasternak, supra*. Again, the First Amended Complaint alleges the assets sought by Plaintiffs were transferred to Liechtenstein and beyond, a few weeks after the entry of Judgment in September 2017. *See* First Amended Complaint, at ¶ 21. Defendant Herman's purported defrauding statements/omissions occurred on December 11, 2019. *See* First Amended Complaint, at ¶ 200-203. As stated, the First Amended Complaint does not describe sufficient facts demonstrating Plaintiffs lost anything *because of* Defendant Herman's purported fraud at his Deposition. Plaintiffs have also not alleged they suffered out-of-pocket losses due Defendant Herman's alleged fraud at his Deposition. New York law does not permit recovery "for what might have been gained." *Pasternak, supra*. This is not an allowable measure of damages for fraud under New York law. Thus, Plaintiffs' Second Claim for Relief must fail.

Because Plaintiffs fail to plead sufficient facts demonstrating reasonable reliance and damages, this Honorable Court should dismiss their Second Claim for Relief under Fed. R. Civ. P. 12(b)(6).

> **2. Alternatively, Plaintiffs should be required to plead a more definite statement under Rule 12(e) when the Second Claim for Relief rests upon unintelligible facts.**

In the event the Court does not dismiss Plaintiffs' Second Claim for Relief under Rule 12(b)(6), it should require a more definite statement under Rule 12(e). The First Amended Complaint, as alleged, is fatally flawed. How can a defrauding act in 2019 cause damages allegedly suffered prior to 2019? The pleading is inconsistent where, on the one hand, Plaintiffs aver Defendant Herman avoided satisfaction of the Judgment when he purportedly transferred $150,000,000 of his assets offshore in 2017 while averring, on the other hand, that Defendant Herman's defrauding act occurred two to three years after the transfers. *See* First Amended Complaint, at ¶¶ 91, 132-141, 149, 156, 169-172, 200-203, 249-250, 254, 250. This reveals a fatal flaw in the pleading, to which Defendant Herman cannot respond. Frankly, no one can resolve how Defendant Herman's 2019 Deposition caused Plaintiffs' damages in 2016-2017.

Accordingly, Plaintiffs should be required to plead a more definite statement under Rule 12(e) when the Second Claim for Relief rests upon unintelligible facts.

> B. *Plaintiffs' Fourth Claim for Relief fails to plead the underlying fraud and is legally deficient.*

"To adequately plead claims for conspiracy to commit fraud under New York law, *in addition to pleading the underlying fraud*, the [plaintiff] must allege the following with the required specificity as to each defendant: (1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective, and (4) knowledge." *Silvercreek Management, Inc. v. Citigroup, Inc.*, 248 F.Supp.3d 428, 446-47 (S.D.N.Y. 2017) (internal citations omitted) (emphasis added). When, and only when, an adequate fraud claim is pled, may

an action for conspiracy to commit fraud lie. *Farey-Jones v. Buckingham*, 132 F.Supp.2d 92, 104 (E.D.N.Y. 2001). There is no independent cause of action for conspiracy to commit fraud. *Dover Ltd. v. A.B. Watley, Inc.*, 423 F.Supp.2d 303, 327 (S.D.N.Y. 2006). Although a plaintiff may raise a conspiracy claim for the purpose of "connect[ing] a defendant to an otherwise actionable tort," it cannot be raised to simply regurgitate a tort asserted against the same defendant. *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 591 (2d Cir. 2005) (dismissing a conspiracy cause of action when it realleged a tort previously pled in the complaint).

Federal Rule of Civil Procedure Rule 9(b) is triggered when pleading fraud. When Rule 9(b) applies, allegations based "on information and belief," and which are conclusory in nature, are insufficient. *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972) (stating words such as "scheme" and "conspiracy" do not satisfy the specificity requirement of Rule 9(b)).

Here, Plaintiffs fail to raise a valid fraud/fraudulent misrepresentation claim – they allege a 2019 fraud caused them 2016-2017 damages. For that reason alone, their Fourth Claim for Relief fails. Moreover, the conspiracy claim only recasts the Second Claim for Relief as against Defendant Herman. In other words, the conspiracy claim is duplicative of the fraud/fraudulent misrepresentation claim. The linchpin of Plaintiffs' fraud claim against Defendant Herman, Paragraph 250 of the First Amended Complaint, is essentially realleged in the Paragraphs set out for the Fourth Claim for Relief. *See* First Amended Complaint, ¶¶ 266-270; 289-290.

Likewise, the "facts" in support of the Fourth Claim for Relief do not pass muster under Rule 9(b). Plaintiffs fail to describe the circumstances surrounding the "agreement" reached between Defendant Herman and the remaining Defendants; instead, Plaintiffs plead in conclusory style that they "conspired" and "masterminded." *See* First Amended Complaint, ¶¶ 266-270; 289-290. It is also unclear what overt acts Defendant Herman took to advance the so-called Scheme.

10

The only act is described in Paragraphs 268 and 289 of the pleading, discussing Defendant Herman's purported Deposition perjury[4]; but those allegations depend on Plaintiffs' "information and belief." The remaining allegations either wrongfully lump the defendants together or are not at all directed at Defendant Herman. *See* First Amended Complaint, ¶¶ 266-290. Under *Aetna Cas. and Sur. Co., supra*, Plaintiffs cannot link Plaintiff to the underlying Scheme when they fail to do so in the Second Claim for Relief for Rule 9(b) purposes. They also fail to plead sufficient facts, with specificity, under Rule 12(e) for the reasons stated herein.

For these reasons, the Honorable Court should dismiss Plaintiffs' Fourth Claim for Relief as against Defendant Herman for conspiracy to commit fraud under F.R.C.P. 12(b)(6) when (1) Plaintiffs fail to plead the underlying fraud and (2) such cause of action is legally deficient.

C.   *Plaintiffs' Sixth Claim for Relief because they do not have standing, because it is time-barred and because the claim violates Rule 9(b).*

**1. Plaintiffs lack standing when they suffered no injury to their "business or property."**

In order to assert a Section 1962(c) RICO claim, a plaintiff must have standing. 18 U.S.C.A. § 1964(c). The plaintiff must demonstrate "(1) a violation of section 1962; (2) *injury to business or property*; and (3) causation of the injury by the defendant's violation." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) (emphasis added). Accordingly, "the plaintiff only has standing if, and can only recover to the extent that, he has *been injured in his business or property* by the conduct constituting the violation. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (emphasis added).

The Second Circuit has addressed the ripeness of RICO claims based upon a "lost debt." *See e.g.*, *D'Addario v. D'Addario*, 901 F.3d 80, 93-95 (2d Cir. 2018) (finding RICO claim unripe

---

[4] Notwithstanding Plaintiffs' conclusory allegation, no Court has determined Defendant Herman "perjured" himself at the December 11, 2019 Deposition.

when the amount of estate distribution was pending and the damage calculation remained uncertain); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135-36 (2d Cir. 2003) (finding RICO claim unripe concerning unpaid loans when loan security was not foreclosed and when related arbitrations were pending). A "lost debt" arises when plaintiff seeks satisfaction of an owed, yet uncollected, obligation from a defendant. *D'Addario, supra*, 94. The issues of ripeness and standing are intertwined "because a plaintiff does not acquire standing by virtue of a claim that is not ripe." *First Capital Asset Management, Inc. v. Brickellbush, Inc.*, 219 F.Supp.2d 576, 578 (S.D.N.Y. 2002). The ripeness of a "lost debt" RICO claim depends on the general rule of calculating fraud damages, *supra*: a plaintiff may only recover for out-of-pocket losses caused by the fraud. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994). Said another way, "[b]ecause the fraud defendant is not liable for all losses that may occur, but only those actually suffered, only after the [plaintiff] has exhausted the bargained-for remedies available to it can the [plaintiff] assert that it was damaged by the fraud, and then only to the extent of the deficiency." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-769 (2d Cir. 1994). The existence of pending parallel proceedings, and yet to be pursued collection efforts, renders a "lost debt" RICO claim unripe. *See D'Addario v. D'Addario*, 901 F.3d 80, 93-95 (2d Cir. 2018) (concerning parallel probate proceedings and plaintiff's inability to calculate her damages); *see also Berman, Trustee for Estate of Michael S. Goldberg, LLC v. LaBonte*, 622 B.R. 503, 520-22 (D. Conn. 2020) (recognizing no futility exception to the ripeness rule and stating RICO "does not provide a remedy before a plaintiff has suffered reasonably ascertainable damages."). A plaintiff cannot treble their damages under RICO without pleading facts in their complaint that means to collect the "lost debt" are exhausted. *Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 397-99 (S.D.N.Y. 2000). ("Because the Plaintiffs have not exhausted the bargained-for remedies, which they admit are available to them, they have not satisfied RICO's requirement of alleging damages that are

12

clear and definite. As a result, Plaintiffs lack standing to sue under RICO, and their claims must be dismissed.").

In *NYKCool A.B. v. Pacific Intern. Svcs., Inc.*, 2012 WL 5462611 (S.D.N.Y. 2012), the Southern District Court of New York dismissed a mail/wire fraud RICO claim as to lost debt damages. *Id.* * 8. On April 28, 2010, NYKCool A.B. ("NYKCool") obtained a maritime arbitration award against Pacific Fruit ("Pacific") and Kelso Enterprises in the amount of $8,787,157. *Id.* *1. Contemporaneously with the award, Pacific transferred $2.6 million of its assets to other interconnected companies, Pacific International Services, Inc. ("PISI") and Pan American Trading Company, Inc. ("PAT"). *Id.* *2. Soon thereafter, Pacific transferred $60,000 to PISI and another $2 million to PAT, the latter company lacked employees and did not conduct any business. *Id.* On September 7, 2011, the court confirmed the arbitration award. *Id.* Between March 2011 and October 11, 2011, Pacific transferred additional assets (approximately $2.8 million) to PISI and Fruit Importers Americans, Inc., who eventually absorbed all of Pacific's business. *Id.* Pacific's corporate heads proffered no reason for the transfers. *Id.* *2-3.

NYKCool sued Pacific (and the transferee companies) on the following theories: (1) piercing the corporate veil/alter ego, (2) setting aside fraudulent transfers, (3) awarding attorneys' fees under N.Y. Debtor and Creditor Law § 276-a, (4) breach of fiduciary duty to a judgment creditor and (5) mail/wire fraud under RICO. *Id.* *3. As to the RICO claim, NYKCool alleged it was unable to satisfy the arbitration award due to defendants' RICO activities (i.e., making Pacific judgment proof). *Id.* *3. Pacific filed a motion to dismiss the RICO mail/wire fraud claim, arguing NYKCool has suffered no loss of a legitimate debt.[5] The Southern District Court of New York agreed with Pacific.

---

[5] Pacific's argument in support of its motion to dismiss, is as follows:

The general rule is a RICO claim does not accrue until the damages become clear and definite. *NYKCool A.B., supra,* \*6; *accord First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994). When the RICO claim seeks a lost debt, such a claim will not accrue until (1) the debt cannot be collected and (2) by reason of a RICO violation. *NYKCool A.B., supra,* \*6; *accord Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1165 (2d Cir. 1993). "Damages are unrecoverable when their accrual is speculative and their amount and nature unprovable." *NYKCool A.B., supra*, \*6; *accord Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988). This rule originates from two similar "debt loss" cases: *Bankers Trust Co., supra,* and *Stochastic Decisions, Inc., supra*.

In *Bankers Trust Co., supra*, plaintiff asserted a RICO action based on defendants' bankruptcy fraud. *NYKCool A.B., supra*, \*6. Plaintiff (Bankers Trust) sought recovery of its legitimate debt, while the bankruptcy proceedings remained pending. *Id.* The Second Circuit ruled the damages sought in the RICO action were too speculative because it remained unknown whether some or all the fraudulently transferred funds would be recovered. *Id.*; *Bankers Trust Co., supra*, at 1106. The Second Circuit expressed that only after the bankruptcy proceeding was resolved would plaintiff's lost debt claim under RICO be ascertainable. *NYKCool A.B., supra*, \*6; *Bankers Trust Co., supra*, at 1106.

---

> [T]he essence of plaintiff's claim in the Fourth Cause of Action is that it suffered loss of a legitimate debt by virtue of the fact that the judgment creditors [Pacific and Kelso] have been rendered insolvent. Yet, in the remaining causes of action, plaintiff seeks to collect the "lost debt" from the defendants on various theories…. Where, as here, the RICO injury alleged by plaintiff is the loss of a legitimate debt, and that debt is also the subject of on-going recovery proceedings, there has been no loss of a legitimate debt and RICO damages are "unrecoverable" because their accrual is "speculative" and "their amount and nature unprovable."

*NYKCool A.B., supra,* \*5.

14

In *Stochastic Decisions, Inc., supra*, a judgment creditor sued for RICO violations, fraud and voiding of fraudulent conveyances. *NYKCool A.B.*, *supra*, *7; *Stochastic Decisions, Inc., supra*, at 1161, 1163. Stochastic, the judgment creditor, obtained a slew of uncollected judgments against various parties, including the DiDomenicos, in New York and New Jersey. *Stochastic, supra*, at 1162-63. Interestingly, the DiDomenicos' attorney, Arthur Wagner (of Wagner, McNiff & DiMaio) recommended his clients sell the Garage to its bus company, conceal proceeds of the sale and avoid judgment creditors. *Id.* at 1162-63. The district court awarded Stochastic its damages on all claims asserted, including RICO. *NYKCool A.B.*, *supra*, *7; *Stochastic Decisions, Inc., supra*, at 1163-64. The Second Circuit reversed on the basis that (relying upon *Bankers Trust*) uncollected judgments were "unprovable," even when the judgment amounts were specific, because of an ongoing bankruptcy proceeding. *NYKCool A.B.*, *supra*, *7; *Stochastic Decisions, Inc., supra*, at 1165-66 ("Similarly, although Stochastic has obtained judgments for specific amounts, the amount of its lost debt cannot be determined at this time because of the ongoing efforts to collect those judgments. As *Bankers Trust* recognized, a debt is lost and thereby becomes a basis for RICO trebling only if the debt (1) cannot be collected (2) 'by reason of' a RICO violation.").

Based on *Bankers Trust* and *Stochastic*, the Second Circuit dismissed NYKCool's RICO claim without prejudice. *NYKCool A.B.*, *supra*, *6; 8. It reasoned NYKCool could not assert a RICO claim (hinged on fraudulent transfers preventing judgment satisfaction) while its piercing the corporate veil/alter ego and fraud related claims remained pending. *Id.* "Because of the pending alternative causes of action to allow NYKCool to collect the judgment, the Second Circuit's decisions in *Bankers Trust* and *Stochastic* require[d] the conclusion that NYKCool's RICO damages are speculative and their amount and nature unprovable." *Id.* (internal quotations omitted).

15

Here, Plaintiffs raise a wire/mail/receipt and transfer of stolen money[6] exceeding $5,000 RICO claim against Defendant Herman, for predicate acts commencing no later than August 2015 and continuing through at least December 2017 (when Defendant Herman retained Neiswender's services and when the Rocla/Roclab funds were transferred to Liechtenstein and beyond). *See* First Amended Complaint, ¶¶ 303-304. Their theory hinges on the "Scheme," fraudulent transfers made for the purpose of evading judgment satisfaction. *See* First Amended Complaint, ¶¶ 1-2. This is the exact failed theory advanced by Pacific in *NYKCool A.B., supra*. Plaintiffs also raise alternative claims, in addition to their purported RICO claim, such as fraud, conspiracy to commit fraud, piercing the corporate veil/alter ego and Repatriation. The existence and nature of these alternative claims are just those raised by Pacific in *NYKCool A.B., supra*. This uncovers a fatal defect to Plaintiffs' RICO claim in that parallel proceedings exist (i.e., the fraud, conspiracy, alter ego/piercing the corporate veil claims and Repatriation), all for the purpose of debt collection, which could affect the amount of damages Plaintiffs may be entitled. The key is whether the Court can calculate Plaintiffs' damages (only when damages are calculable, will the Court be able to treble those damages for RICO purposes); but the Court cannot determine Plaintiffs' damages while alternative theories of recovery remain pending. In *Bankers* and *Stochastic*, collateral bankruptcy proceedings remained pending; in *NYCKool*, the creditors raised causes of action in addition to RICO. Similarly, in our case, Plaintiffs' potential damages are subject to change (depending on the success of the alternative causes of action), that renders Plaintiffs' potential RICO damages incalculable. As in *NYKCool A.B., supra*, relying upon *Bankers Trust* and *Stochastic*, Plaintiffs' purported damages are speculative and unprovable – despite their Judgment against Defendant Herman for an amount certain. Plaintiffs cannot seek treble damages under

---

[6] Although this is not a subject of this Motion, it is dubious how Plaintiffs can allege money they never possessed was somehow "stolen" from them by Defendant Herman.

RICO when their damages are uncertain. Besides, it is telling Plaintiffs seek a trial to determine their damages, as they themselves cannot calculate their damages. *See* First Amended Complaint, ¶ 325.

Another fatal flaw, regardless of whether the Court dismisses the Second, Fourth, Seventh, and Eighth Claims for Relief under Rule 12(b)(6), is Plaintiffs have not exhausted their Judgment collection efforts. Indeed, there is no single fact averred in the First Amended Complaint that Plaintiffs have tried, and failed, to collect upon their Judgment. According to the pleading, Defendant Herman's last purported predicate act in the Scheme was his closing the Oakworth accounts on January 19, 2018. *See* First Amended Complaint, ¶ 172. The pleading, although unclear, infers Defendant Herman has taken no further action on the Scheme.

However, what is clear is Plaintiffs have at least four (4) pending legal proceedings seeking collection on one Judgment, especially the Eighth Claim for Relief in this very lawsuit. As noted above, this Court must, as a general matter, accept Plaintiffs' allegations as true at this stage. This Court however can consider certain kinds of documents when ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6). Specifically, this Court "may take judicial notice of" documents "filed in another court" so long as it does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks omitted). And it can consider documents, on which Plaintiffs rely in their complaint, that "read in [their] entirety, would undermine the legitimacy of the plaintiff's claims." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

As such, this Court can consider recent filings by Plaintiffs in three other litigations wherein they are actively taking steps to collect on their judgment, specifically a motion filed by Plaintiffs in Florida state court litigation seeking repatriation of funds, a subpoena recently issued

by Plaintiffs in the underlying New York state court litigation seeking additional discovery in aid of execution, and the Amended Complaint pending in the District Court of Colorado related to the "Aspen Residence" explicitly referenced in paragraphs 186-198 of Plaintiffs' Amended Complaint. See Exhibits 1, 2, and 3 to Affirmation of Jack Kallus (ARIEL E. BELEN and ROSEMARIE HERMAN's *Motion During Proceedings Supplementary: (I) To Compel Discovery from the Judgment Debtor and for Appointment of Magistrate to Assist in Discovery In Aid of Execution: (II) For Sanctions and for an Adjudication of Contempt for Perjury; (III) To Enjoin Further Transfer of Assets; and (IV) To Compel the Judgment Debtor to Repatriate Remote Funds*, filed on June 27, 2022, at Case No. 2018-CA-001952 in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Plaintiffs' *Subpoena Duces Tecum to Akerman LLP*, dated September 16, 2022, at Index No. 650205/2011 in the Supreme Court of the State of New York, County of New York, and Plaintiffs' *Amended Complaint,* filed on January 6, 2021, at Case No.: 1:19-cv-00584 in the United States District Court for the District of Colorado). These documents clearly demonstrate that Plaintiffs' collection efforts remain ongoing.

Plaintiffs have suffered no out-of-pocket losses caused by the alleged predicate acts when their First Amended Complaint fails to demonstrate they have exhausted all their bargained-for remedies, including attaching to assets located in the United States and/or in foreign countries. There is no futility exception under the Second Circuit's ripeness rule for Plaintiffs to rely. Based on Second Circuit precedent, collection efforts must be successfully exhausted before a RICO claim accrues. As stated in *NYKCool*, the creditor's claim must be uncollectible, and Plaintiffs do not plead a fact expressing their Judgment is uncollectible – they simply aver it is out of *immediate* reach. *NYKCool, supra*, at *6; *see* First Amended Complaint, ¶ 132. Like *Bankers Trust, supra*, it remains to be seen whether some or all the purported fraudulently transferred funds can be recovered by Plaintiffs. Also, like *Stochastic*, *supra*, although Plaintiffs maintain a Judgment for

an amount certain, their "lost debt" still cannot be determined "because of the ongoing [and potential] efforts to collect those judgments." See also *Ritter v. Klisivitch*, 2008 WL 2967627, at *7 (E.D.N.Y. July 30, 2008) ("Because the plaintiff's collection efforts were ongoing—by virtue of the federal action itself in which plaintiff asserted that the transfers were fraudulent conveyances under state law—the actual amount of its injury was indefinite and unprovable; therefore, plaintiff did not yet have standing under RICO.") Further, Plaintiffs have undoubtedly not exhausted all potential efforts to collect, especially when they are attempting to "repatriate" funds and have yet to institute collection proceedings in the foreign jurisdictions described in the pleading. Southern District Court of New York and Second Circuit precedent require only one conclusion: Plaintiffs' RICO claim must be abated until all efforts to collect upon their Judgment have failed. Accordingly, due the speculative nature of their damages, Plaintiffs certainly have no injury to business or property. Plaintiffs cannot suffer injury to business or property they never had or tried to attain and failed – they have no standing to raise a RICO claim.

Thus, Plaintiffs lack standing to assert their Sixth Claim for Relief when they suffered no injury to their "business or property."

### 2. Plaintiffs' Sixth Claim for Relief is time-barred.[7]

Typically, a civil action arising from an Act of Congress must be commenced no later than four years after the claim accrues. 28 U.S.C. § 1658(a). Indeed, RICO claims bear a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156-57

---

[7] Defendant Herman raises the statute of limitations argument in alternative to the position described in Section IV.C.1 (relating to Plaintiffs' lack of standing). Namely that, under *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988), and its progeny, the Second Circuit stated a RICO claim does not accrue until damages become definite. *See also Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993) ("[A] RICO claim does not accrue until it is established that collection of the claim or judgment has been successfully frustrated."). For purposes of the statute of limitations argument, Defendant Herman presumes Plaintiffs' "injury" concerns the purportedly committed predicate mail/wire/money transferring acts directed and/or committed by Defendant Herman between 2015-2017. Defendant Herman also presumes that Plaintiffs' efforts to collect on its Judgment are successfully frustrated.

(1987); *Elsevier, Inc. v. Grossman*, 77 F.Supp.3d 331, 348 (S.D.N.Y. 2015). The courts in this Circuit follow the injury discovery rule to determine when a RICO claim accrues. *In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 60 (2d Cir. 1998). That rule specifies "a plaintiff's action accrues against a defendant for a specific injury on the date that plaintiff discovers or should have discovered that injury." *Id., citing Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988). Accrual occurs when plaintiff has actual or inquiry notice of the injury. *Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) ("Moreover, when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry."). "[W]hen a RICO plaintiff makes no inquiry once the duty arises; knowledge will be imputed as of the date the duty arose. Thus, once there are sufficient storm warnings to trigger the duty to inquire, and the duty arises, if a plaintiff does not inquire within the limitations period, the claim will be time-barred." *Koch v Christie's Intern. PLC*, 699 F.3d 141, 153 (2d Cir 2012) (internal quotations and citations omitted). Discovery of the injury, not discovery of the other RICO claim elements, is what starts the clock. *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Kock, supra*, 149. Presuming a plaintiff fails to timely raise her RICO claim, the district court may resolve such an issue with a motion to dismiss. *Yaroni v. Pintec Tech. Holdings Ltd.*, 2022 WL 1215450 *6 (S.D.N.Y 2022); *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n. 12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

Here, Plaintiffs were on inquiry notice as early as September 2017 for purposes of their RICO claim. Paragraph 112 of the Amended Complaint is telling:

112. In September 2017, shortly before the Judgment was entered, Plaintiffs *learned*, through allegations contained in an interpleader complaint filed by UBS in the United States District Court for the Southern District of New York, that the Judgment Debtor held substantially all of his liquid assets with UBS until 2016, in accounts titled to multiple shell entities and at least one trust with a fictitious name, and transferred those assets to Vanguard in or about June 2016.

(emphasis added). For motion to dismiss purposes, the Court must presume this allegation is true; Defendant Herman will do the same. Plaintiffs discovered their injury in September 2017, as that was the time Plaintiffs uncovered the first stage of Defendant Herman's alleged Scheme. Moreover, the subject Judgment was entered in September 2017, necessitating a duty to inquire at that point. *See* First Amended Complaint, ¶ 72. Accordingly, the clock started against Plaintiffs on September 2017, and they should have filed their RICO claim sometime before September 2021.

"On December 11, 2019, Plaintiffs took the Judgment Debtor's [Defendant Herman's] deposition in Florida." *See* First Amended Complaint, ¶ 200. At the deposition, it is alleged Defendant Herman testified falsely under oath regarding his relationship with Rocla and Roclab. *See* First Amended Complaint, ¶ 202. It is also alleged that Defendant Herman refused to testify regarding trusts and businesses not established in Florida. *See* First Amended Complaint, ¶ 203. Plaintiffs had the opportunity to raise their RICO claim then; but they did not. On May 25, 2021, and July 7, 2021, Plaintiffs obtained responses to its 2021 (second) Information Subpoena from Vanguard. *See* First Amended Complaint, ¶¶ 206-211. In those responses, it is alleged Vanguard admitted that Defendant Herman was signatory to the Rocla and Roclab accounts. *See* First Amended Complaint, ¶¶ 208-210. It also admitted they held such accounts at the time of the 2017 Restraining Notice and 2017 (first) Information Subpoena. *See* First Amended Complaint, ¶ 210. Plaintiffs had the opportunity to raise their RICO claim then; but they did not. Plaintiffs also served a subpoena *duces tecum* on Vanguard in New York on August 13, 2021, requesting documents that ultimately uncovered the "Scheme." *See* First Amended Complaint, ¶¶ 212-215. Plaintiffs had

the opportunity to raise their RICO claim then; but they did not. Rather than raise their RICO claim in calendar years 2017, 2018, 2019, 2020 or even 2021, they wait and file the initial Complaint on June 24, 2022 – approximately nine (9) months *after* the lapsing of the statutory period.[8] The basis of the RICO claim is a purported pattern of assets transferred from account to account, eventually leading to "Lichtenstein and beyond," to defraud Plaintiffs and avoid Judgment satisfaction. The Court should impute knowledge of the Scheme upon Plaintiffs as early as September 2017, as that is when Plaintiffs could have, with reasonable diligence, uncovered the Scheme. An investor of ordinary intelligence would have filed a RICO claim then; yet Plaintiffs stalled until June 24, 2022 – passed the applicable four-year deadline.[9] [10]

Thus, Plaintiffs' Sixth Cause of Action is time-barred.

---

[8] Defendant Herman only presumes the allegations specified herein are true for motion to dismiss purposes. He does not admit the veracity of such allegations for all purposes.

[9] The Second Circuit also follows the "separate accrual" rule, permitting a plaintiff recover under RICO for each time she discovers or should have discovered an injury. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 ("Under this rule, each time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred. A plaintiff . . . must then bring his action within four years of this accrual to recover damages for the specific injury."). In this case, the last predicate act appears to have occurred January 19, 2018, when Defendant Herman purportedly closed numerous domestic accounts following the fraudulent transfers. First Amended Complaint, ¶ 172. That means, for "separate accrual" purposes, Plaintiffs could only recover for injuries Plaintiffs discovered or should have discovered before January 19, 2022. But, the First Amended Complaint does not contain any allegations of injuries occurring after that debt related to RICO. Even assuming there was a RICO injury, Plaintiffs still filed this lawsuit beyond the limitations period under the "separate accrual" rule (June 24, 2022 is after January 19, 2022). Thus, Plaintiffs' RICO claim is time-barred under the "separate accrual" rule.

[10] Defendant Herman also posits that the statute of limitations is an impediment to Plaintiffs even if they later demonstrate they have exhausted their collection efforts. For instance, if they seek satisfaction of the Judgment from assets in "Liechtenstein and beyond," fail in doing so and then re-file their RICO claim in October, 2022 (or later), that still is not within 4-years of Defendant Herman's presumed last predicate act on January 19, 2018, closing accounts holding the $150,000,000. *See* First Amended Complaint, ¶ 172. This is true whether the Court applies the injury discovery rule (applying a September, 2017 start date and adding four years into September, 2021) or the separate accrual rule (looking four years before the RICO claim filing of October, 2022 into October, 2018 and determining whether Plaintiff discovered or could have discovered an injury). To the separate accrual rule, there would be no basis for RICO when the last predicate act occurred in January 19, 2018, which is before October, 2018. Quite simply, whether the Court looks prospectively under the injury discovery rule or retrospectively under the separate accrual rule, Plaintiffs RICO claim is time-barred.

### 3. Plaintiffs' Sixth Claim for Relief does not satisfy the requirements of Fed. R. Civ. P. 9(b).

Under Section 1962(c) of RICO, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a valid claim under Section 1962, in addition to pleading the standing requirements, *supra*, a plaintiff must allege facts demonstrating: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley*, 719 F.2d 5, 17 (2d Cir. 1983).

For RICO purposes, an "[e]nterprise is defined to include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *First Capital Asset Mngt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (internal citations omitted). An association in fact must have at the least, the following features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Mayfield v. Asta Funding, Inc.*, 95 F.Supp.3d 685, 699 (S.D.N.Y. 2015), *citing Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

RICO claims require pleading with particularity under Rule 9(b). *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 130-31 (S.D.N.Y. 1999) ("Rule 9(b) also applies to civil 'RICO claims for which fraud is the predicate illegal act.'"); *accord Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172-73 (2d Cir. 1999).

The Second Circuit Court of Appeals explained:

> In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. The plaintiffs must also identify the purpose of the mailing within the defendant's fraudulent scheme. In addition, the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.

*Moore, supra* at 173. Averments related to fraudulent intent cannot be conclusory. *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). The heightened pleading requirements of Rule 9(b) apply equally to predicate acts of mail and wire fraud. *Angermeir v. Cohen*, 14 F.Supp.3d 134, 145 (S.D.N.Y. 2014).

"The essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as to the object of the scheme, and (3) use of the mails or wires to further the scheme." *U.S. v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007). These elements must be pled with particularity. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013); *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) ("Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent.") (internal quotations omitted).

Here, Plaintiffs' RICO claim fails for particularity under Rule 9(b), warranting dismissal.[11] As explained, *supra*, Plaintiffs have no standing to raise their RICO claim, necessitating dismissal under Rule 9(b). It also unclear what racketeering activity Defendant Herman engaged, as there must be a defrauding scheme involving money and use of mails, wires or money transfer to further

---

[11] Defendant Herman also moves for a more definite statement under Rule 12(e) based upon the deficient averments described herein. In the context of RICO claims, the district court may grant a Rule 12(e) motion when a plaintiff fails to identify which racketeering acts a particular defendant engaged. *See e.g., U.S. v. Private Sanitation Ind. Ass'n of Nassau/Suffolk, Inc.*, 793 F.Supp. 1114, 1130-31 (E.D.N.Y. 1992) (requiring plaintiff's RICO claim to provide defendant notice as to what racketeering act he is alleged to have committed under Rule 8(a)).

the scheme. The pleading is devoid of particular facts showing a "defrauding scheme," as transferring funds from account to account – otherwise innocuous activity – does not necessarily demonstrate fraud. Most importantly, fraud requires an injury, to which Plaintiffs have suffered none, *supra*.

Further, Plaintiffs fail to allege any facts demonstrating an association in fact between Defendant Herman and the remaining co-defendants. At best, there may be an association between Defendant Herman (or his firm Dentons Sirote) and Neiswender, due the purported "agency" relationship. *See* First Amended Complaint, ¶¶ 74-84, 302. But even that allegation falls short to describe a defrauding purpose when Neiswender purportedly organized companies on Defendant Herman's behalf in South Dakota. And, other than concluding as such, Defendant Neiswender's opening accounts with Vanguard and Oakworth does not clearly identify a defrauding purpose involving Defendant Herman. *See* First Amended Complaint, ¶¶ 85-111, 132-146. Also, other than simple money transfers occurring in September 2017 and October 2017, there are no facts constituting longevity between Defendants Herman and Neiswender concerning this alleged fraud. And there are certainly no facts suggesting an association in fact between Defendant Herman and Vanguard, Oakworth, Rocla or Roclab. Likewise, Plaintiffs attempt to label the encumbrance on 952 Fifth as a "fraud"; but again, the mere act of encumbering real property does not, in and of itself, suggest fraud. *See* First Amended Complaint, ¶¶ 175-199. Finally, the allegations concerning Defendant Herman's *unrelated* dealings with "other judgment creditors," such as JPMorgan Chase Bank, N.A., does nothing more than show Plaintiffs' not-so-veiled attempt to erroneously paint Defendant as a routine defrauder – that does not demonstrate any association in fact. *See* First Amended Complaint, ¶¶ 223-236. Further, Paragraphs 10, 18, and 132 fail to describe the "fraudulent" content of Defendant Herman's directions/communications. *See* First Amended Complaint. Paragraphs 20, 132 and 164 do not explain Defendant Herman's "intent."

Thus, Plaintiffs' Sixth Claim for Relief does not satisfy the requirements of Fed. R. Civ. P. 9(b), and should be dismissed.

> **D.** *Plaintiffs' Seventh Claim for Relief fails when it does not plead sufficient facts in support and when the allegations for the Seventh Cause of Action violate Rule 9(b).*

"Under New York law, a party seeking to pierce the corporate veil must generally show that: '(1) the *owners* exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a *fraud or wrong* against the plaintiff which resulted in plaintiff's *injury*.'" *EED Holdings v Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005), *citing Matter of Morris v. N.Y. State Dept. of Taxation and Fin.*, 603 N.Y.2d 135, 141 (1993) (emphasis added). The elements to establish alter ego liability are similar. *See Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 386 F.Supp.3d 319, 355 (S.D.N.Y. 2019) ("Under the alter ego theory of piercing the corporate veil, a plaintiff must demonstrate a mingling of the operations of the entity and its *owner* plus an overall element of *injustice or unfairness*.") (emphasis added) (internal quotations omitted). New York does not recognize piercing the corporate veil or alter ego liability as independent causes of action. *Bd. of Managers of 195 Hudson St. Condominium v. Jeffrey M. Brown Assoc., Inc.*, 652 F.Supp.2d 463, 478 n.10 (S.D.N.Y. 2009). In other words, the validity of these extraordinary theories, to hold an owner responsible for corporate obligations, depends on an underlying action (such as fraud). *See e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d. Cir. 1991) (explaining piercing the corporate veil is predicated upon a fraud or wrong); *In re Cabrini Medical Center*, 489 B.R. 7, 16-17 (S.D.N.Y.) (applying piercing corporate veil theory in ERISA claim). Further, "[w]here the veil-piercing claims are based on allegations of fraud [] the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be

examined." *In re Currency Conversion Fee Antitrust Litigation*, 265 F.Supp.2d 385, 425 (S.D.N.Y. 2003).

> **1. Plaintiffs' claim fails when Defendant Herman is not the owner of Rocla/Roclab, when he did not engage in fraud/wrongful activity and when Plaintiffs suffered no injury.**

In South Dakota, a limited liability company may be member-managed or manager-managed. SDCL § 47-34A-404.1.[12] In Paragraph 327 of the First Amended Complaint, Plaintiffs allege "[t]he sole member and manager of Rocla was EntityA, whose sole member and manager was [Defendant] Neiswender." In Paragraph 328 of the Amended Complaint, Plaintiffs allege "[t]he sole member and manager of Roclab was EntityB, whose sole member and manager was Neiswender." Neither of these averments mention Defendant Herman as a member or manager of the entities. The only allegations in the pleading bearing any tangential significance are Paragraphs 329 and 330 concerning Defendant Herman's interest in Rocla and Roclab:

> 329. The sole authorized signatory on the Fraudulent Rocla and Rocla Accounts at Vanguard was Judgment Debtor.
>
> 330. Upon information and belief, the sole authorized signatory on the Rocla and Roclab accounts at Oakworth was the Judgment Debtor.

To be clear, neither Paragraph 329 nor Paragraph 330 aver Defendant Herman has any ownership or control over the affairs of Rocla and Roclab. A signatory on a limited liability company's bank account does not grant the signatory ownership, control or dominion of the company. It simply does not follow that a "signatory" has authority over the companies beyond signing checks; yet, this is the assumption that the Seventh Claim for Relief rests. Indeed, Defendant Neiswender's April 2016 Letters to Vanguard – that "Mr. Herman is <u>not</u> the owner of the account" upends Plaintiffs' arguments. *See* First Amended Complaint, ¶ 98. Due the foregoing,

---

[12] Presuming the truth of the Complaint's allegations, Rocla and Roclab were organized pursuant to South Dakota law; hence, reference to that jurisdiction's laws.

the First Amended Complaint is devoid of facts demonstrating Defendant Herman is the owner of either Rocla or Roclab. Thus, Plaintiffs fail to establish Defendant Herman is the owner of either the Rocla or Roclab as a matter of law.

Moreover, Defendant Herman incorporates his argument set out in Section IV.A.1 of this Memorandum, as though fully set forth at length herein, concerning lack of fraud. In addition, Plaintiffs' First Amended Complaint, short of simply describing asset transfers to and from financial accounts (otherwise innocuous conduct), fails to describe any wrongdoing committed by Defendant Herman. Because there is no fraud or wrong committed by Defendant Herman, the Seventh Claim for Relief must be dismissed. Defendant Herman also incorporates his argument set out in Section IV.C.1 of this Memorandum, as though fully set forth at length herein, for purposes of establishing Plaintiffs' failure alleging injury.

Thus, Plaintiffs' Seventh Claim for Relief should be dismissed as a matter of law.

### 2. Plaintiffs' Seventh Claim for Relief violates Rule 9(b).[13]

Paragraphs 330 (alleging Defendant Herman as the sole signatory of the Rocla/Roclab accounts at Oakworth), 331 (alleging Rocla and Roclab had no legitimate business interest other than to perpetuate a fraud) and 334 (alleging Defendant Herman directed his assets be transferred from Oakworth to Liechtenstein) are all based upon Plaintiffs' "information and belief." These allegations do not pass Rule 9(b) muster. *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005). Paragraphs 326 (alleging Defendant Herman's participation in the Scheme), 335 (alleging Defendant Herman's "complete domination" over Rocla, Roclab and wire transfers), 336-337 (alleging Defendant Herman's domination over Rocla, Roclab and his assets) and 338 (alleging Rocla and Roclab were alter egos) are mere recitation of the elements

---

[13] Defendant Herman further moves for a more definite statement under Rule 12(e) due the deficiencies described herein.

for piercing the corporate veil/alter ego theories and advance no facts in support – conclusions are insufficient. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972). Again, Plaintiffs may say "look to the rest of the Complaint," however, the First Amended Complaint demonstrates a failed attempt to weave a web that does not exist, *supra* – Defendant Herman cannot rely on the pleading for context.

Accordingly, Plaintiffs' Seventh Claim for Relief violates Rule 9(b), warranting dismissal.

E. *Plaintiffs' Eighth Claim for Relief fails as it does not assert a legally cognizable claim.*

"Pursuant to Federal Rule of Civil Procedure 69(a)(1), money judgments are enforced by entry of judgment and writ of execution, not by a contempt order absent exceptional circumstance." *NYKCool A.B. v. Pacific Fruit Inc*., 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012) (Peck, M.J.) (Report & Recommendation), objections overruled by, 2012 U.S. Dist. LEXIS 152925 (S.D.N.Y. May 9, 2012) (Kaplan, D.J.); see *Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997); *Hilao v. Estate of Marcos*, 95 F.3d 848, 854-55 (9th Cir. 1996); *Combs v. Ryan's Coal Co*., 785 F.2d 970, 980 (11th Cir. 1986). "The size of the award and the difficulties in enforcing the judgment due to ... the uncooperativeness of the judgment debtor are not the types of extraordinary circumstances which warrant departure from the general rule." *Kerr v. Thomas*, 14CIV9168KBFHBP, 2017 WL 485041, at *3 (S.D.N.Y. Feb. 3, 2017), report and recommendation adopted sub nom. Kerr v. John Thomas Fin., 14-CV-9168 (KBF), 2017 WL 1609224 (S.D.N.Y. May 1, 2017) (Internal quotations and citations omitted.)

Here, in denying a request by the United State of America to enforce a money judgment obtained in the Supreme Court of the State of New York, this Court held that Fed. R. Civ. P. 69(a) "is not to be construed as applying to judgments other than those of the Federal Court." *United States v. Potter*, 19 F.R.D. 89, 89 (S.D.N.Y. 1956). Likewise, Federal Courts cannot be utilized as

"an arm of the State Court with respect to collection of its judgment." *Id.* at 90; *see also Kirtz v. Wiggin*, 538 F. Supp. 1218, 1221 (E.D. Mo. 1982) ("This Court will not be used as a forum to execute on a state judgment."). Plaintiffs' Eighth Claim for Relief runs afoul of this hallmark principle and therefore must be dismissed.

Plaintiffs also seek a remedy beyond the issuance of a writ of execution and fail to allege any exceptional circumstances entitling them to relief not normally available under Fed. R. Civ. P. 69(a). This Claim for Relief merely rests on the allegation (based "upon information and belief") that funds that could satisfy the Judgment are offshore, nothing more. *See* First Amended Complaint, ¶ 341. Plaintiffs have just not alleged any circumstances warranting departure from the general rules governed under Fed. R. Civ. P. 69. Accordingly, Plaintiffs' assertion that this Court has personal jurisdiction over Defendant Herman is immaterial to the analysis. *See* First Amended Complaint, ¶ 342. The Court simply does not have subject matter jurisdiction over the Eighth Claim for Relief. *See Berger v. L.L. Bean, Inc.*, 351 F. Supp.3d 256, 260 (E.D.N.Y. 2018) ("A federal court must dismiss a case for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate it.") (internal citations omitted).

Finally, while Plaintiffs allege, they seek an order of repatriation under New York Law, Plaintiffs fail to articulate what New York law they rely. Notwithstanding, New York law dictates when property or funds "sought is in the possession of someone other than the judgment debtor, the judgment creditor must follow the procedure set forth in section 5225(b), which requires that the creditor **commence an action against the person in possession**." *Runaway Dev. Group v. Pentagen Techs. Intern. Ltd.*, 396 F. Supp. 2d 471, 474 (S.D.N.Y. 2005) (emphasis added, internal quotations omitted); *see also* N.Y. C.P.L.R. 5225(b) (McKinney) ("Upon a special proceeding commenced by the judgment creditor, **against a person in possession or custody of money** or other personal property in which the judgment debtor has an interest…") (Emphasis added).

Plaintiffs have repeatedly alleged the funds they seek are in offshore accounts. *See* First Amended Complaint, ¶¶ 340-341. However, Plaintiffs' Eighth Claim for Relief is against Defendant Herman. This Claim for Relief is procedurally barred under New York law.

Thus, Plaintiffs' Eighth Claim for Relief fails as it does not assert a legally cognizable claim.

## V.   <u>CONCLUSION</u>

Based upon the foregoing, Defendant JULIAN M. HERMAN respectfully requests this Honorable Court enter an Order granting the subject Motion in favor of Defendant JULIAN M. HERMAN and against Plaintiffs ARIEL E. BELEN and ROSEMARIE HERMAN:

a)   Dismissing the Second Claim for Relief under Rule 12(b)(6), for failure to plead sufficient facts demonstrating reasonable reliance and damages or, alternatively, requiring Plaintiffs plead a more definite statement under Rule 12(e);

b)   Dismissing the Fourth Claim for Relief under Rule 12(b)(6), for failure to plead the underlying fraud and due the cause of action's legal deficiency or, alternatively requiring Plaintiffs plead a more definite statement under Rule 12(e);

c)   Dismissing the Sixth Claim for Relief under 12(b)(6), for lack of standing or, alternatively, due the claim being time-barred, and for lack to comport with Rule 9(b) (requiring a more definite statement under Rule 12(e)); and

d)   Dismissing the Seventh Claim for Relief under 12(b)(6), for failure to plead facts in support of Defendant Herman's ownership of Rocla and Roclab, for failure to plead any defrauding or wrongful act by Defendant Herman, for failure to plead any injury and for failure to comport with Rule 9(b) (requiring a more definite statement under Rule 12(e));

e)   Dismissing the Eighth Claim for Relief under 12(b)(6), for failure to plead a legally cognizable claim; and

f)   Awarding such other relief the Court deems fair and proper.

Dated: October 21, 2022.

Respectfully submitted,

**KAUFMAN, DOLOWICH & VOLUCK, LLP**

*/s/Jack Kallus*
Jack Kallus, Esq.
40 Exchange Place, 20th Floor
New York, New York 10005
Telephone (954) 302-2360
Facsimile (888) 464-7982
jkallus@kdvlaw.com

32