# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

ARIEL E. BELEN, as Temporary Co-Trustee of
the Trust created by Harold Herman dated March 1,
1990 and as Temporary Trustee of the Trust
created by Rosemarie Herman dated November 27,
1991, and ROSEMARIE HERMAN, as Co-Trustee
of the Trust created by Harold Herman dated
March 1, 1990,

                     Plaintiffs,

   -against-

JULIAN M. HERMAN, ROCLA, LLC, ROCLAB,
LLC, THE VANGUARD GROUP, INC.,
OAKWORTH CAPITAL BANK, DENTONS
SIROTE, PC, DENTONS US LLP, and HOWARD
NEISWENDER,

                     Defendants.

------------------------------------------------------------- x

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

22 Civ. 6455 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiffs, as trustees, are judgment creditors of Defendant Julian M. Herman, in the amount of $103,637,208.44, pursuant to a judgment of the New York Supreme Court entered September 17, 2017. Efforts to obtain payment have failed. Plaintiffs allege that defendants, individually and as part of an elaborate and fraudulent scheme carried out in 2016 and 2017, caused Julian Herman to be judgment proof by moving his assets overseas, to accounts in Liechtenstein and other sheltering havens. Plaintiffs, in eight counts of a First Amended Complaint against eight defendants, seek recovery from each defendant.

      Defendants removed this case from the Supreme Court and, in four motions, seek to dismiss the lawsuit for failure to state a legally sufficient claim for relief. A fifth motion seeks, alternatively, to dismiss Defendant Oakworth for lack of personal jurisdiction, or to

1

transfer the case to the United States District Court for the Northern District of Alabama. The several motions are granted in some respects and denied in others, as described below.

## THE AMENDED COMPLAINT

The following facts are alleged in a First Amended Complaint (FAC), which I must "accept[] as true" for the purpose of these motions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I have disregarded defendants' affidavits stating additional facts, since I am asked to rule on motions to dismiss, and I have not converted them to motions for summary judgment. Fed. R. Civ. P. 12(d).

In 2011, Plaintiffs sued Julian M. Herman ("Julian") in New York Supreme Court for defrauding Rosemary Herman ("Rosemary"), Julian's sister, of her fifty percent interest in six Manhattan apartment buildings.[1] On September 19, 2017, the Supreme Court entered judgment in favor of Rosemary and her co-trustee, Ariel Belen, in the amount of $103,637,208.44. In anticipation of the judgment, Julian initiated steps to insulate his assets. He retained Howard Neiswender, a partner and shareholder of Defendant Dentons Sirote ("Sirote"),[2] a law firm located in Birmingham, Alabama, because of his expertise in asset protection. In December 2015, Neiswender formed multiple limited liability companies and trusts, including Defendants Rocla LLC, and Roclab LLC, limited liability companies organized under the laws of South Dakota. Their stated address was that of Sirote, in Alabama, and they were managed, indirectly, by Neiswender.

Julian held his cash in a number of accounts to be opened in UBS Bank in New York City, in the names of limited liability companies he had created for that purpose. Among

---

[1] Rosemary's 50 per cent ownership was in a trust. Plaintiffs Belen and Rosemary were co-trustees of the trust set up by Rosemary and Julian's father for the benefit of Rosemary and her children.
[2] The FAC alleges Defendant Dentons Sirote is the successor-in-interest to Sirote & Permutt, PC.

2

them were Defendants Rocla and Roclab, both limited liability companies created in South Dakota.

In April 2016, Julian, with Neiswender's guidance and participation, opened brokerage accounts with The Vanguard Group, Inc. in the names of two of these companies, Rocla and Roclab, and gave his name and social security number as the controller of the accounts. The next day, Julian instructed Vanguard to close the two accounts and open two new accounts for Rocla and Roclab, this time making the controller of the accounts "Maurice J. Herman," Maurice being Julian's real middle name, and providing a false social security number. FAC ¶10. Neiswender instructed Vanguard to conceal that Julian signed for the new accounts, and Vanguard complied. In May 2016, Julian funded the Vanguard accounts with over $150 million in securities, transferring the assets from his companies' accounts at UBS.

In September 2017, Plaintiffs learned from a UBS interpleader complaint ("UBS complaint") that Julian held his assets in shell companies with accounts at UBS, and that those assets were transferred to accounts at Vanguard. The UBS Complaint also alleged that Defendants Neiswender and Sirote were involved with these accounts.[3] After Plaintiffs' judgment against Herman became final, they then served a restraining notice on Vanguard[4], requiring it to "restrain all accounts in which [Herman] had an ownership interest or for which he was a signatory," and an information subpoena requesting information about accounts for which Herman "may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within three (3) years prior thereto, including but not limited to any account for which the judgment debtor has or had

---

[3] I take judicial notice of the UBS complaint, since it is a public record that was filed in this court. Additional matters stated in affidavits are disregarded.
[4] CPLR § 5222 authorizes restraining notices supplementary to judgments. A party that is served with such a notice may incur personal liability if it fails to make proper disclosure and restrain the debtor's assets.

3

signatory power." FAC ¶¶14, 15. Vanguard responded that it had no open accounts, and one closed account with an amount on deposit of zero dollars.

Two weeks later, Neiswender, on behalf of Julian, instructed Vanguard to liquidate the accounts and to transfer the funds (approximately $150 million) to Defendant Oakworth Capital Bank, a small Alabama bank that held only $500 million in customer assets in 2017. Neiswender then instructed the bank to make fifteen wire transfers of $10 million each to an account in Liechtenstein, by way of Citibank in New York. Oakworth sent a confirmation of each transaction to Herman. On January 19, 2018, the Oakworth accounts were closed. On July 1, 2021, Rocla and Roclab were dissolved.

Plaintiffs continued to pursue their recovery efforts. On February 9, 2021, Plaintiffs again served an informational subpoena on Vanguard, asking "does Vanguard have, or did it ever have, any account held by or in the name of any of the following entities: . . . Rocla, LLC, Roclab, LLC . . . ." FAC ¶208. Vanguard responded in May and July 2021 that its records "listed [Herman] as 'Signator[ies]' to the Rocla and Roclab Accounts," and stated that those accounts were in existence when Plaintiffs had served Vanguard with a restraining notice and informational subpoena in 2017. FAC ¶ 210. Plaintiffs allege that this was the first time they became aware that Julian hid his money in Rocla and Roclab accounts in Vanguard.

On June 24, 2022, Plaintiffs filed this lawsuit in New York Supreme Court against all the parties involved in sheltering Julian's assets: Julian Herman, Rocla LCC, Roclab LLC, The Vanguard Group, Inc., Oakworth Capital Bank, Dentons Sirote, Dentons U.S. LLP[5], and Howard Neiswender. Following Defendants' removal of the action, Plaintiffs filed a First Amended Complaint alleging eight claims for relief: 1) violation of a restraining order pursuant

---

[5] Plaintiffs allege that Dentons U.S. LLP is liable derivatively because of the wrongs committed by Dentons Sirote. *See* discussion *infra*.

4

to CPLR § 5222 against Vanguard, 2) fraud/fraudulent misrepresentation against Julian and Vanguard, 3) negligence/negligent misrepresentation against Vanguard, 4) conspiracy to commit fraud against all defendants, 5) aiding and abetting fraud against Vanguard, Oakworth, Neiswender, Sirote, Dentons U.S. LLP, Rocla, and Roclab, 6) violation of RICO under 18 U.S.C. § 1962(d) and conspiracy to violate RICO under 18 U.S.C. § 1962(c) against Julian, Neiswender, Vanguard, and Oakworth, 7) veil-piercing declaratory judgment against Julian, Rocla, and Roclab, and 8) repatriation of funds by Julian under Fed. R. Civ. P. 69(a) and "New York Law."

The motions before me challenge the legal sufficiency of Plaintiffs' allegations.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Fraud claims, and RICO claims predicated on fraudulent acts, must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009). The complaint must "1) specify the statements that the plaintiff contends were fraudulent, 2) identify the speaker, 3) state where and when the statements were made, and 4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

5

## DISCUSSION

### I. Oakworth's motion challenging personal jurisdiction and venue

#### A. Fed. R. Civ. P. 12(b)(2)

The issue is whether Oakworth Capital, a citizen of Alabama, is subject to long-arm jurisdiction in New York.

Under the New York long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). Two prongs must be met: "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). The first prong requires a showing that the entity "purposefully avails itself of the privilege of conducting activities within New York." *Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 993 (2014). The second prong requires a showing of "relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Licci v. Lebanese Canadian Bank, SAL*, 984 N.E.2d 893, 901 (2012). To survive a Fed. R. Civ. P. 12(b)(2) motion, the complaint must include allegations of "an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated." *Daou v. BLC Bank, SAL*, 42 F.4th 120, 132 (2d Cir. 2022) (granting 12(b)(2) motion because the plaintiffs alleged only a general practice of the defendants routing funds through New York accounts).

First, the FAC plausibly alleges that Oakworth purposefully availed itself of New York through its fund transfers to Citibank NYC. These were no one-off or passive transfers: as alleged, Oakworth initiated, tracked, and confirmed all fifteen $10 million wire transfers that

6

were destined for Citibank NYC, and, through Citibank, to shelters overseas. See Belen Decl. ¶29; Ex. 9; *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 6 (2016) (finding New York contacts to be purposeful where defendant made twelve transfers through New York correspondent accounts, totaling over $4 million, to effectuate bribes); *Licci*, 984 N.E.2d at 901 ("us[ing] a New York account 'dozens' of times indicates desirability and a lack of coincidence"). That a third-party, The Independent Bank (TIB) in Texas, executed the transfers as an agent of Oakworth is irrelevant. *Rushaid*, 68 N.E. at 10 ("A foreign bank with a correspondent account . . . that repeatedly approves deposits and the movement of funds through that account for the benefit of its customer is no less 'transacting business in New York' because . . . a third party actually deposits or transfers the funds to New York.").

Second, the connection between these transactions and the harm alleged is clear; As pled, Oakworth facilitated the covert transfer of Herman's assets through New York to Liechtenstein, implementing Herman's wrongful avoidance of Plaintiffs' New York judgment against him, establishing an "articulable nexus" to New York. *Licci*, 984 N.E.2d at 900–01 (2021) (articulable nexus adequately pled through deliberate use of a New York account "again and again to effect its" illicit activity). Unlike in *Daou*, and like in *Licci* and *Rushaid*, the FAC points to the specific meetings Oakworth scheduled and then cancelled relating to the transactions, the dates, amounts, and frequency of the transactions. *Daou*, 42 F.4th at 132.

This is not one of the "rare" cases where CPLR § 302(a)(1) is satisfied, but due process is not. *Licci v. Lebanese Canadian Bank, SAK* 732 F.3d 161, 170 (2d Cir. 2013). Oakworth's repeated approval of the movement of $150 million through Citibank NY for Herman's benefit establish the minimum contacts necessary to show it "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court

there." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (internal quotations omitted). The prosecution of this case in this court does not constitute an unfair surprise or substantial injustice.

### B. Motion to transfer venue

Oakworth moves pursuant to 28 U.S.C. §1404(a) to transfer venue to the Northern District of Alabama because 1) venue is improper in the Southern District of New York and 2) for the convenience of the parties and witnesses. Neither argument has merit; the case is to remain in this Court.

First, venue is proper in the Southern District of New York. 28 U.S.C. § 1441. Herman's efforts to evade the New York judgment against him, and the facilitation of others to hide and move Herman's assets from New York provide a sufficient basis for venue.

Second, Plaintiffs are entitled to substantial deference in their chosen forum, especially because it is their home district. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). Courts are also to consider, *inter alia*, the convenience of witnesses, the location of relevant documents and sources of proof, convenience of parties, and the locus of operative facts. *Id.* at 107. The Northern District of Alabama may be more convenient for Oakworth, but not for Plaintiffs. *See DLJ Mortg. Cap., Inc. v. Cameron Fin. Grp., Inc.*, 07cv3746 (LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007). Alabama cannot be said to be more convenient to parties and witnesses than New York.

## II. Civil RICO

### A. Analysis

In order to state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege (1) conduct of, or association in, (2) an enterprise engaged in or affecting commerce (3) though a

8

pattern (4) of racketeering activity. *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).[6] RICO claims like Plaintiffs', which are predicated on mail and wire fraud, "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (internal quotations and citations omitted).

Plaintiffs' civil RICO claims fail on the enterprise element; the FAC contains no pleading of an enterprise independent of the predicate acts upon which the claims are based. A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The enterprise must exist "separate and apart from the pattern of activity in which it engages." *Id.*; *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004).

The sole identity of the enterprise as alleged in the FAC is the fraud the defendants are accused of committing against Plaintiffs to conceal Herman's assets. *See* RICO Case Statement 16 ("The members of the enterprise shared the common purpose of fraudulently concealing the Judgment Debtor's assets and hindering Plaintiffs' and JP Morgan's efforts to enforce their judgments."); FAC ¶297. Plaintiffs fail to allege an enterprise "separate and apart"

---

[6] Defendants urge dismissal of the civil RICO claims as time-barred. However, whether Defendants were on inquiry notice before June 24, 2018, is a question of fact inappropriate for resolution at this stage. Civil RICO claims are subject to a four-year limitations period, commencing when the plaintiff "discovers or should have discovered the injury." *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 147, 150 (2d Cir. 2012). In the Second Circuit, the civil RICO limitations period begins upon inquiry notice of the RICO injury. *Id.* at 151. Plaintiffs must have been on inquiry notice no earlier than June 24, 2018 for their civil RICO claims to be actionable. Plaintiffs claim they did not know about Rocla and Roclab, or these transfers involving the other defendants, until Vanguard disclosed them in its subpoena responses on May 25, 2021 and July 7, 2021. FAC ¶ 211. Defendants argue that given Plaintiffs' knowledge of the UBS Complaint, they should have been on notice of their injuries as soon as Vanguard returned its 2017 response on October 3, 2017.

from the predicate acts constituting the RICO offense, the concealment and transfer of Herman's funds. If the movement of Herman's funds "were removed from the equation," there would be no enterprise between the Defendants. *See Wood v. Inc. Vill. Of Patchogue*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004).

Nor is the pattern element sufficiently alleged, as there are no allegations of open nor closed-ended continuity. The FAC alleges, at most, one scheme: the attempt to move Herman's Rocla and Roclab-associated funds offshore, which occurred between March 2017 and January 2018. *See MinedMap, Inc. v. Northway Mining, LCC*, 21-1480-cv, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022) (a one-scheme RICO claim "can hardly be considered a large-scale fraud as generally seen in RICO cases"). The Second Circuit consistently finds single-purpose schemes with few participants and victims of this nature to be insufficient to establish a RICO pattern. *See Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605–06 (2d Cir. 2019); *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178 (2d Cir. 2008); *First Cap. Asset Mgmt., Inc.*, 385 F.3d at 182. Defendants' motions to dismiss Plaintiffs' civil RICO claims are granted.

### B. Jurisdiction

The dismissal of the civil RICO claim divests this Court of federal question jurisdiction. The next question is whether there is another basis of federal subject matter jurisdiction such that the Court may preside over the state law claims. Defendant Dentons U.S. LLP is a New York citizen, spoiling complete diversity between the parties. *See* ECF No. 2 ¶24; *Roche Cyrulnik Freedman LLP v. Cyrulnik*, 582 F. Supp. 3d 180, 197 (S.D.N.Y. 2022) ("an LLP is treated as a citizen of every state of which its partners are citizens"). The Complaint makes two specific references to Dentons U.S. LLP: 1) that Dentons U.S. LLP is a "foreign limited-

10

liability company and a member of Dentons, a global service law firm which maintains officers in the City, County, and State of New York," and 2) that Dentons Sirote, the "successor in interest to Sirote & Permutt, PC," is a "subsidiary and/or member of Dentons U.S. LLP." Compl. ¶ 28.[7]

Defendants, wishing to remain in federal court, urge this Court to ignore the citizenship of Dentons U.S. LLP based on fraudulent joinder. *See* ECF No. 2 ¶24. They argue because Dentons Sirote is not owned or controlled by Dentons U.S. LLP, and since the Complaint alleges no wrongdoing by Dentons U.S. LLP, it is not a proper defendant. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998); ECF No.2; Ex. B, Reich Decl. ¶6.

The well-pleaded complaint rule requires a district court to evaluate the face of the complaint for any cause of action providing a federal court with subject matter jurisdiction. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). One exception to this rule is fraudulent joinder, when a defendant asserts that a party has been improperly included in the action to defeat diversity. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 206–07 (2d Cir. 2001). To prove fraudulent joinder, a defendant must demonstrate "by clear and convincing evidence . . . that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461. On this issue, the Court may, and I do, rely on supporting affidavits. *Id.* at 462.

The Complaint points to no direct wrongdoing by Dentons U.S. LLP and does not assert a vicarious liability or a veil-piercing claim sufficient under state law. *Id.* Furthermore, Denton US LLP's general Counsel Edward J. Reich states in his declaration that "[n]either

---

[7] The Complaint that was operative at the time of removal governs this fraudulent joinder analysis. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003).

11

Dentons U.S. LLP nor any of its partners (nor Dentons Group) has an ownership interest in Dentons Sirote or otherwise controls Dentons Sirote's activities." ECF No.2; Ex. B, Reich Decl. ¶6. Plaintiffs do not contradict Reich's assertion by any plausible allegation. The Complaint has no allegations of fraud committed because of a blurring of parent and subsidiary, nor any fact that would create derivative liability by Dentons U.S. for wrongs committed by Dentons Sirote.

Dentons U.S. LLP is dismissed from the suit, and the Court retains diversity jurisdiction over the remaining state law claims.

### III.   Violation of restraining notice pursuant to CPLR § 5222 and Negligence Claims

Defendant Vanguard's motion to dismiss Plaintiffs' restraining notice violation and negligence claims (Counts One and Three) are granted. Both claims are based on Vanguard's response to the restraining notice on October 3, 2017; both are subject to three-year limitations periods; and both became time-barred on October 3, 2020, more than twenty months before this suit was filed in the Supreme Court on June 24, 2022. *See Broecker v. Conklin Prop., LLC,* 138 N.Y.S.3d 177, 181 (N.Y. App. Div. 2020) (*citing* CPLR § 214(4)); *Syndicate Bldg. Corp. v. City Univ. of N.Y.*, 573 N.Y.S.2d 386, 389 (N.Y. Ct. Cl. 1991); CPLR § 214(2) (three-year statute of limitations applies to recovery actions "imposed by statute"). Neither claim is entitled to equitable tolling because the same act cannot both be an underlying harm and conceal the underlying harm. *Ross v. Louise Wise Servs. Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007).

### IV.   Fraud, Conspiracy to Commit Fraud, and Aiding and Abetting Fraud

#### A. Elements of common law fraud-related claims

To state a claim for fraud under New York common law, "a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006). Misrepresentations can

be made to a third party, provided the defendant intended that the misrepresentations be communicated to the plaintiff. *Sec. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 76–77 (2d Cir. 2000).

To sufficiently plead a conspiracy to commit fraud, a plaintiff must demonstrate, in addition to the underlying fraud, that there was: (1) a corrupt agreement between two or more parties regarding the fraud; (2) an overt act in furtherance of that agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) an injury. *Savitsky v. Mazzella*, No. 98 Civ. 9051 RWS, 2004 WL 2454120, at *6 (S.D.N.Y. Nov. 1, 2004), *aff'd*, 210 F. App'x 71 (2d Cir. 2006).

To sufficiently plead a claim for aiding and abetting fraud, a plaintiff must show 1) the defendant's actual knowledge of the fraud and 2) that the defendant provided "substantial assistance to advance the fraud's commission." *Lerner*, 459 F.3d at 292.

### B. Herman and Vanguard – Fraud

The FAC plausibly states a fraud claim under New York common law against Herman and Vanguard. The FAC alleges that Herman made misrepresentations to Vanguard regarding his identity and the true owner of his assets, and, in connection with the holders of his assets, Rocla and Roclab. That Vanguard did not rely on these misrepresentations, but used them to give pretext to its false responses, stating that it did not have assets owned by Herman, and to heed instructions from Neiswender to conceal Herman's ownership, is irrelevant. Though a jury may ultimately find that Herman's efforts were made to conceal the scheme from Vanguard, rather than partner with Vanguard to further the fraud as plausibly alleged, the claim as alleged is sufficient to proceed at this stage. *See Twombly*, 550 U.S. at 570. Judging from the pleadings alone, I cannot say that Plaintiffs' allegations are not plausible.

Reliance and injury also are plausibly alleged. Plaintiffs allege that they did not further pursue Vanguard in reliance upon the 2017 response, allowing Herman to facilitate the transfer of his funds offshore without detection or restraint. Plaintiffs' reliance was reasonable, in light of what they knew at the time. *See Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (reasonableness of alleged reliance requires consideration of the "entire context," including "sophistication of the parties"). Absent these misrepresentations, Plaintiffs would have been able to recover on judgment, or an appreciable portion of the judgment.[8] Defendants' motions against Count Two are denied.

### C. Herman, Neiswender, Sirote, Vanguard, Oakworth – Fraud Conspiracy

The FAC plausibly states a claim for conspiracy to commit fraud against all moving defendants. As alleged, Neiswender, Sirote, and Oakworth are all associated with each other, and knowingly joined a conspiracy to defraud Plaintiffs. Neiswender and Sirote, his law firm, knowingly hid and transferred Herman's assets, advising him to hide them in impenetrable Liechtenstein trusts. Vanguard and Oakworth knowingly lent themselves to Herman and Neiswender's scheme. Plaintiffs' allegations are sufficient and plausibly alleged. Defendants' motions to dismiss Count Four are denied.

### D. Neiswender, Sirote, Vanguard, Oakworth - Aiding and Abetting Fraud

The same facts that allege conspiracy among all Defendants sufficiently and plausibly allege claims for aiding and abetting against Neiswender, Sirote, Vanguard, and Oakworth. Defendants' motions to dismiss Count Four are denied.

---

[8] It appears from the UBS Complaint that JP Morgan Chase also had claims to Herman's assets.

14

## V.     Veil Piercing Declaratory Judgment

Defendants' motion to dismiss Plaintiffs' claims for an alter ego declaratory judgment against Herman, Rocla, and Roclab (Count Seven) is denied. The FAC establishes a prima facie case to pierce the corporate veil for Plaintiffs' underlying fraud claim against Rocla and Roclab under South Dakota law. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (law of the state of incorporation applies to a corporate veil piercing claim). South Dakota law requires two elements to be met: 1) that there was "such unit of interest and ownership that the separate personalities of the corporation and its . . . officers . . . are indistinct or non-existence" and 2) that "adherence to the fiction of separate corporate existence [would] sanction fraud, promote injustice or inequitable consequences or lead to an evasion of legal obligations." *Kansas Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 111–13 (S.D. 1994). The facts as alleged show that Neiswender exercised complete control over Rocla and Roclabs, and that, as alleged, took advantage of the obscuring nature of the corporate form to facilitate the fraud on Herman's behalf.

## VI.    Order of repatriation

The motion to dismiss Plaintiffs' claim for an order of repatriation is denied. Plaintiffs sufficiently plead their entitlement to such relief based on CPLR § 5225, made applicable to the Court under Fed. R. Civ. P. 69. Plaintiffs plausibly allege that they have an enforceable judgment against Herman, empowering this court to "order any person to execute and deliver any document necessary to effect payment and delivery." CPLR § 5225(c).

## CONCLUSION

For the above reasons, defendants' motions to dismiss are granted in part and denied in part as follows: the claims for violation of restraining notice (Count One), negligence (Count Three), and civil RICO (Count Six) are dismissed. Dentons U.S. LLP is dismissed. All

other counts and parties remain. Plaintiffs shall file a second amended complaint consistent with my rulings, by January 30, 2024. Defendants shall file answers by February 13, 2024. The parties shall make their Fed. R. Civ. P. 26(a)(i)(A) disclosures by February 23, 2024, file a proposed joint case management plan by February 28, 2024, and appear for a remote initial case management conference on March 1, 2024, at 10 a.m. The Clerk shall terminate the open motions at ECF Nos. 23, 27, 31, and 34.

SO ORDERED.

Dated:   January 17, 2024
         New York, New York

/s/ ALVIN K. HELLERSTEIN
ALVIN K. HELLERSTEIN
United States District Judge